## THOMPSON et al. v. HILL et al.*

(Division A.  May 23, 1927.)

[112 So. 697.  No. 25879.]

1. LANDLORD AND TENANT. *Sales. Landlord selling personalty to tenant does not by taking chattel mortgage waive statutory landlord's lien on crops or purchase-money lien.*

   Statutory lien is not waived by taking other security, unless the security taken is inconsistent with that given by law, so landlord selling personal property to tenant for use on leased premises, by taking chattel deed of trust on the property sold, does not waive his statutory landlord's lien on the crops raised on the leased premises, or his statutory purchase-money lien on the property itself for the balance of the purchase price thereof.

2. BANKRUPTCY. *Bankrupt held not relieved by discharge from personal liability on notes not listed in schedules with petition, holders in due course having no notice (U. S. Compiled Statute, section 9601).*

   Under U. S. Compiled Statute, section 9601, discharge in bankruptcy does not relieve bankrupt from personal liability on notes, where they were not listed in the schedules filed with the petition in

bankruptcy, and the holders in due course thereof were not given notice of pendency of the bankruptcy proceeding.

---

*Corpus Juris-Cyc. References: Bankruptcy, 7CJ, p. 403, n. 46; Landlord and Tenant, 36CJ, p. 522, n. 29; p. 523, n. 36; Sales, 35Cyc, p. 489, n. 45.

APPEAL from chancery court of Tallahatchie county, Second district.

HON. C. L. LOMAX, Chancellor.

Suit by C. H. Thompson against A. J. Hill and others. From decree dismissing the bill of complaint and also the cross-bill of defendant Stewart-Gwynne Company, complainant and cross-complainant appeal. Reversed and remanded.

*J. J. Breland* and *Lamar F. Easterling,* for appellant, C. H. Thompson.

I. Under the contract of lease between Thompson and Hill, Thompson had a landlord's lien on all crops grown on the leased premises for the year 1923 and also had a lien for the value of the teams and implements sold to Hill at the same time and used by him on the leased premises in making the crops.

The law on landlord and tenant is so plain that it is only necessary to refer to sections 2330-31, Hemingway's Code. Thompson was the lessor of the premises and had a paramount lien on all agricultural products raised on the leased premises to secure the payment of his rent. By positive statute this lien is paramount to all other liens. It will take precedence over that of mortgages or deeds of trust. Therefore, Thompson had a lien which will be enforced unless the same has been lost to him in some way known to the law.

It was first claimed by W. R. Humphrey that Thompson lost his lien by allowing or permitting the storage in the warehouse and the compress tickets to be taken

by Hill. This defense involves a consideration of the evidence in the case.

If it can be said that the answers of Humphrey and Hill raised the question of a waiver of the landlord's lien, the burden of proof was upon them to prove that Thompson had waived his landlord's lien and we say that the proof is utterly insufficient to show this.

When the leased contract was drawn up between Thompson and Hill on December 8, 1922, it was in writing and embodied the whole agreement between the parties, covering the amount to be paid, the date of the payment, the property listed, the personal property sold, and what the landlord obligated himself to do and what the lessee obligated himself to do. It will be presumed that this contract embraced the entire contract between the parties.

Sections 2330-31, Hemingway's Code, give appellant, C. H. Thompson, an absolute and paramount lien on all the crops raised on the leased premises for the rent and furnish thereunder made to the tenant. When the note, lease, bill of sale, deed of trust and notes consummating the lease contract were made, the statute giving the lien and remedy for rent and advances enters into and forms a part of the contract of lease. 36 C. J., page 488, section 1448.

When it is attempted to show by oral evidence that before the contract was entered into, Mr. Thompson had agreed or had said in the negotiation that Hill should sell his cotton or that Thompson could waive his lien in this manner is insufficient, because the very object and purpose of such testimony is to contradict the agreement in writing between the parties giving the lien and the right of enforcing it against the agricultural products. We say that this evidence was improperly admitted, for it has been held in a long line of cases by this court that prior or contemporaneous agreements cannot be admitted to contradict or vary the terms of a written instrument. *Chicago Bldg. & Mfg. Co.* v. *Higginbotham,*

29 So. 79; *Felb* v. *Stewart,* 28 So. 819, 78 Miss. 187; *Thompson* v. *Bryant,* 20 So. 655, 75 Miss. 12; *Baum* v. *Lynn,* 18 So. 428, 72 Miss. 932; *Johnson* v. *Johnson,* 21 So. 147, 74 Miss. 549.; *O'Neal* v. *McCloud,* 28 So. 23; *Milburn Gin & Machine Co.* v. *Ringold,* 19 So. 675;. *Houck* v. *Wright,* 23 So. 442; *Maxwell* v. *Chamberlain,* 23 So. 266; *Sellers* v. *Dickert,* 64 So. (Ala.) 40; *Fed. Discount Co.* v. *Fletcher,* 61 So. 308, 104 Miss. 251; *McCall Co.* v. *Parsons-May-Oberschmidt Co.,* 66 So. 274, 107 Miss. 865; *Ohio Pottery Co.* v. *Pickle & Son,* 66 So. 321; *Hightower* v. *Henry,* 37 So. 745, 85 Miss. 476.

In further support we refer also to: *Ballard* v. *Brown,* 93 Miss. 104, 46 So. 137; *English* v. *N. O. & N. E. Co.,* 100 Miss. 809, 57 So. 223; *N. O. & N. E. R. R. Co.* v. *Lott,* 118 Miss. 157, 79 So. 1; *Garner* v. *Garner,* 117 Miss. 694, 78 So. 623; *Germania Life Ins. Co.* v. *Boldin,* 100 Miss. 660, 56 So. 609.; *Hickman Ebbert Co.* v. *Asa W. Allen Co.,* 111 Miss. 161, 71 So. 310; *Cooper* v. *Robertson Inv. Co.,* 107 Miss. 108, 77 So. 953; *Cox* v. *Reed,* 113 Miss. 488, 74 So. 330.

We presume that counsel for appellee will attempt to bring this case within the rule announced in *Judd* v. *Delta Gro. Co.,* 98 So. 243; *Phillips* v. *Thomas,* 91 So. 420; *Seavy* v. *Godvold,* 99 Miss. 113, 54 So. 838. But in all of these cases the evidence shows that the landlord had entrusted the tenant to sell the cotton or there was a relationship or habitual custom on the part of the landlord to let the tenants sell the cotton, but we submit that in the instant case there is no such proof. Mere silence or inaction on the part of the landlord will not waive his paramount lien. In order to waive his lien he must commit some positive act such as would work an estoppel, or else he must make the tenant his agent for the purpose of selling his cotton.

We submit that a landlord's lien is paramount even to a deed of trust given by the tenant upon the crop, and that in order to destroy the landlord's lien it must

be by a strong statement of facts showing waiver on the part of the landlord.

The proposition put forward by W. R. Humphrey about the negotiability of the warehouse receipts does not "cut any ice" in this case. We think it was held in *Campbell* v. *Farmers Bank of Boyle,* 90 So. 436, that allowing the tenant to store the cotton and take a compress ticket therefor does not waive the landlord's lien.

Pending this suit, Mr. A. J. Hill was adjudged a bankrupt and pleaded his discharge in bankruptcy as a bar to any decree against him by either Mr. Thompson or Stewart Gwynne Company. In the fall of 1923 Mr. Thompson had a conference with Mr. Hill and Mr. Hill admitted that he had compress tickets for twenty bales of cotton raised on the Edmondson place, which Mr. Thompson says Hill refused to turn over to him. Now, we submit, that even if it could be held that Thompson had authorized Hill to sell any cotton from the leased premises prior to this, this conference was a revocation of Thompson's alleged statement to Hill.

Hill's conversion of this twenty bales of cotton is not a claim probable in bankruptcy even if the notice given to Thompson and Stewart Gwynne Company of the bankruptcy proceedings be held sufficient. Hemingway's Code, sections 864, 895, 992, 1019, and 1132; *Porter* v. *State,* 83 Miss. 23, 35 So. 218; *Polk* v. *State,* 65 Miss. 433; *Baker* v. *Bryant Fert. Co.,* 272 Fed. 473; "Conversion," 18 A. L. R. 1426; *In re Stenger,* 283 Fed. 419, 7 C. J., page 402, note 8, section 38; *Bever* v. *Swecker,* 138 Iowa, 721, 116 N. W. 704. See, also, note under section 718 (e), *Hallagan* v. *Dowell,* 139 N. W. 883, holding that a fraudulent appropriation of the property or money of another is willful and malicious injury to such property.

We say, therefore, that if appellee's theory that he was the agent of Thompson in the sale of the cotton should be held to be correct, then Hill is liable to Thompson and Stewart Gwynne Company, both under the bankrupt law cited in 7 Corpus Juris 402.

II. *The cross-bill of appellant Stewart Gwynne Company.* Stewart Gwynne Company was the assignee of the two notes for one thousand dollars each, executed by A. J. Hill on December 8, 1922, to C. H. Thompson and secured by a chattel mortgage on the mules, teams, and implements sold and delivered to Hill contemporaneously with the execution of the lease contract. These notes and chattel mortgage were assigned on January 12, 1923, just a little over thirty days from the time they were taken.

The undisputed evidence in the case is that Stewart Gwynne Company was an innocent purchaser for value of these notes before maturity.; in fact, just about thirty days after their execution. As the holder of these notes, when brought into this case, Stewart Gwynne Company asserted its landlord's lien on the crops raised on the leased premises.

The gravamen of the answer of Humphrey to the cross-bill of Stewart-Gwynne Company was that Thompson in taking a chattel mortgage for the mules, tools and implements furnished to Hill, his tenant, waived a landlord's lien. We submit that neither the answers of Humphreys nor of Hill sufficiently and clearly plead the waiver relied on in the evidence.

Thompson had a lien on the mules, tools and implements sold to his tenant, Hill, to secure these two notes, upon the entire crop raised upon the leased premises for that year as soon as said crops were planted. This landlord's lien is especially conferred by statute. See sections 2330-31, Hemingway's Code.

Under the authorities the law giving the landlord's lien is written into the contract between the parties just as fully as if set out in words and figures. This being true, these notes for the mules and implements must be treated as though the law above cited was written into the very face of them and when Stewart Gwynne Company acquired these notes in January, 1923, they thereby acquired as a necessary incident thereto the landlord's

lien conferred by statute securing the same. The Stewart Gwynne Company, as to the two notes assigned to them in due course for value, became the landlord as against the said Hill and said crops as security for the payment of said note.

It is well settled in this state by law and by decision that the assignee of notes for rent or supplies is entitled to the same remedy as the original landlord. Sections 2331-36.; *Coker* v. *Britt,* 78 Miss. 583, 29 So. 833; *Davis* v. *Blanton,* 71 Miss. 821, 15 So. 822. The landlord's lien passes by assignment of the rent note. *Newman* v. *Bank,* 66 Miss. 323, 50 So. 573; *Taylor* v. *Nelson,* 54 Miss. 524. Section 2336, Hemingway's Code, especially confers the remedy upon the lessor or lands of his assignees. *Davis* v. *Blanton, supra.* See, also, Hemingway's Code, title, "Negotiable Instruments, Article 4," especially sections 2603-04; 24 Cyc. 1250, citing *Blanchard* v. *Raines,* 20 Fla. 467.

Stewart Gwynne Company having acquired said notes, and said notes being secured by a landlord's lien on the crops on the leased premises for 1923, acquired said landlord's lien as an incident to the note, and no defense can be interposed of any waiver by Thompson, or by Hill, for that matter; for Hill when he drew the written instruments consummating the final agreement as to the lease of the premises, represented to the world—as shown by the statute—that Thompson had a landlord's lien for the rent and for the supplies. See *Sims* v. *Klein,* 104 So. 85; *Brown* v. *Yarborough,* 94 So. 887; *Green* v. *Morris,* 117 Miss. 635, 78 So. 550; *Nester* v. *Davis,* 100 Miss. 199, 56 So. 347; *Lindsey* v. *Bates,* 42 Miss. 397; *Gabbert* v. *Wallace,* 66 Miss. 618, 5 So. 394.

We submit that no act of Thompson's could operate to discharge the lien of Stewart Gwynne Company. We submit that no secret defense or agreement between Thompson and Hill could waive or discharge the landlord's lien securing this note, as fully sustained by the authorities cited.

Between two innocent parties, Stewart Gwynne Company and W. R. Humphrey, upon which should this loss of two thousand dollars or more fall? Can it be said that Mr. Humphrey, who boldly purchased this cotton stored in the name of a different party, without making the slightest inquiry, could prevail over Stewart Gwynne Company, shown to be innocent purchasers for value?

Counsel for Hill and for Humphrey have raised the question by demurrer as to whether or not Thompson had not waived his landlord's lien for the two thousand dollars balance on the personal property by taking the note and deed of trust of the tenant therefor. The court overruled these demurrers and he was preeminently correct.

We submit that the lien for mules, tools and implements was not waived under our statute. See *Smith* v. *Butts,* 72 Miss. 279, 16 So. 242; *Smith* v. *Burns,* 72 Miss. 966, 18 So. 483; *Peabury* v. *Johnson,* 51 Miss. 291; *Tremble* v. *Durham,* 70 Miss. 295, 12 So. 207.

III. *As to the Tutwiler Compress Company.* We submit that the Tutwiler Compress Company having been made a party defendant and being charged with a notice of the proceeds, if it let the cotton get away without protecting itself, is liable. A bailee delivering property to a bailor having notice that it was stolen property, is liable to the owner for its value. *Hattiesburg Auto Sales Co.* v. *Morrison,* 101 So. 690.

*S. L. Gwin, C. B. Snow, J. O. Day* and *Cutrer & Smith,* for appellee, W. R. Humphrey.

It is our contention that where the under-tenant, Hill, in order to protect his possession, discharges his landlord's obligations to the lessor, he may successfully set up the payment as a defense to an action instituted by his landlord for failure to pay rent. 16 R. C. L. 876:

Tiffany on Landlord and Tenant, page 1003, paragraph 164; page 1087, paragraph 177e.

Of course, if the subtenant Hill had a right to charge these expenditures made by him in the protection of his possession of the premises off against his landlord, Thompson's claim against him for rent, and said claim for rent is thereby discharged necessarily, Thompson's claim against this appellee fails and the chancellor in dismissing the bill against this appellee was eminently correct.

*Waiver of lien, estoppel.* It is undisputed that W. R. Humphrey purchased the cotton from Hill by the purchase through his representative of the negotiable warehouse receipts evidencing the same and that he was the innocent purchaser of such warehouse receipts for a valuable consideration in due course of trade and without notice of any lien thereon.

It is urged by this appellee that at the time he purchased the negotiable warehouse receipts for said cotton that the appellant, Thompson, had waived his landlord's lien thereon; had constituted his tenant, Hill, as his agent for the disposal of said cotton; and had clothed his tenant, Hill, with the *indicia* of ownership of the negotiable warehouse receipts representing the cotton; and, consequently, is, and was, estopped to enforce his landlord's lien against the cotton so purchased by this appellee.

Counsel for appellant, Thompson, objected to testimony of A. J. Hill, Sam Hill and Dan Brewer with reference to the agreement between Thompson and Hill as to the sale of Hill's cotton, which said agreement took place during the negotiations leading up to and prior to the execution of the written lease contract between Thompson and Hill.

It will be noted that the lease contract is entirely silent and no reference is made therein as to the handling or the selling of the cotton produced on the premises during the term thereof and, therefore, the oral agreements had between Hill and Thompson with reference thereto and

as an inducement to the execution of the written contract are clearly competent. Such oral agreements are the exception to the parole evidence rule. This testimony falls clearly within the rule stated in 9 Ency. of Evidence, 350.

We think this case falls directly within the rule announced in *Magee* v. *Carver,* 106 So. 760. See, also, *Tonner* v. *Washington & Issaquena Bank,* 105 So. 750, 140 Miss. 875; *Judd* v. *Delta Gro. & Cotton Co.,* 98 So. 243, 133 Miss. 866; *Phillips* v. *Thomas,* 91 So. 420, 128 Miss. 729; *Seavey* v. *Godbold,* 54 So. 838, 99 Miss. 113; *Conn* v. *Smith,* 64 Miss. 816.

All these authorities hold that where the course of dealing between the landlord and the tenant was such that the tenant disposed of the crop with the knowledge of the landlord, and the landlord asserted no rights as to its disposition, but permitted the tenant to control it, looking to the tenant to pay money rent, this procedure constituted the tenant the agent of the landlord for the sale of the cotton and if the tenant failed to carry out his trust, the loss must fall on the landlord who clothed him with this authority. This line of decisions of the court is conclusive in the instant case.

The supreme court of the United States has held to the same effect in *Commercial Nat. Bank* v. *Canal Louisiana Bank & Trust Co.,* 36 Sup. Ct. Rep. 194, 239 U. S. 520.

*Claim of Stewart Gwynne Company.* First, let us see what was in the minds of the parties in this transaction. Thompson sold the personal property to Hill for a consideration of four thousand dollars, and at the time of the sale considered this property worth four thousand dollars and that such sum was a fair valuation therefor. He received two thousand dollars on the purchase price and took two notes, one for one thousand dollars due on December 1, 1923, and another for a like sum due on December 1, 1924. The reasonable inference would be, therefore, that Thompson at this time considered that a deed

of trust on this personal property would be ample security for these two notes.

There is no question but that by statute the landlord has a lien for the value of livestock, tools and farming implements furnished the tenant on the crop produced on the leased premises for one year thereafter. This lien is given to the landlord by the specific provisions of section 2331 of Hemingway's Code. This section also by its provisions gives to the landlord a lien on the live stock, tools and implements so furnished to the tenant. But when Thompson elected to take a deed of trust on the livestock and farming implements worth four thousand dollars as security for his two notes aggregating two thousand dollars, fifty per cent of the value of the property, instead of retaining his statutory lien on all of the property—the livestock implements and agricultural products produced during the year 1923—coupled with the reasonable inference above mentioned as to Thompson's intention, he elected to carve out of the security given him by the statute certain specific security; to-wit, the livestock and farming implements, and in so doing, thereby waived and extinguished his statutory landlord's lien on the agricultural products produced on the leased premises during the year 1923. 17 R. C. L. 608; *Clower* v. *Rawlings*, 9 S. & M. (Miss.) 122; *Gaines* v. *Keeton*, 68 Miss. 473, 10 So. 71; *Smith* v. *Butts*, 72 Miss. 269, 18 So. 483; 2 Jones on Liens, paragraph 1520; *Burke* v. *Grey*, 6 How. (Miss.) 527; *Johnson* v. *Sugg*, 13 S. & M. 346; *Johnson* v. *Union Bank*, 37 Miss. 526; *Fonda* v. *Jones*, 42 Miss. 792; *Myers* v. *Estelle*, 48 Miss. 372; *Doyle* v. *Orr*, 51 Miss. 229.

That an assignment as security for a preexisting debt does not constitute the assignee a *bona-fide* holder in due course has been held by this court numbers and numbers of times. *Pope* v. *Pope*, 40 Miss. 516; *McLeod* v. *Bank*, 42 Miss. 99; *Perkins* v. *Swank*, 43 Miss. 349; *Hinds* v. *Pugh*, 48 Miss. 268; *Surgett* v. *Boyd*, 57 Miss. 485; *First*

*Nat'l Bank* v. *Strauss,* 66 Miss. 479; *Eckert* v. *Searcy,* 74 So. (Miss.) 818.

Argued orally by *J. J. Breland* and *L. F. Easterling,* for appellants, and *C. B. Snow,* for appellees.

COOK, J., delivered the opinion of the court.

The appellant, C. H. Thompson, filed his original bill of complaint in the chancery court of the second judicial district of Tallahatchie county against A. J. Hill, the Tutwiler Compress Company, the Planters' Bank, and the Planters' National Bank of Clarksdale, and the Stewart-Gwynne Company, seeking to locate certain cotton raised on a certain plantation, situated in Sunflower county and known as the "Edmondson place," and to enforce a landlord's lien on said cotton. The bill alleged that the complainant had leased this plantation from E. J. Edmondson at an annual rental of six thousand dollars, and that he subleased it to the defendant A. J. Hill under a written lease contract, at and for an annual rental of seven thousand five hundred dollars, evidenced by a promissory note for six thousand dollars, due and payable November 15, 1923, and a note for one thousand five hundred dollars, due December 1, 1923, and that the six thousand dollar-note had been paid, but no part of the one thousand five hundred dollar-note had been paid. The Tutwiler Compress Company was made a party defendant to the bill of complaint for the purpose of securing a discovery of the cotton produced on said premises during the year 1923, it being alleged that said cotton was stored in the warehouse of said company. The Planters' Bank and the Planters' National Bank were made parties defendant upon the allegation that the defendant Hill executed to each of these banks a deed of trust on the cotton grown on the premises during the year 1923, and turned over to them compress tickets or receipts for cotton grown thereon. The Stewart-Gwynne

Company was made a party defendant, it being alleged that this company was the holder of two notes for one thousand dollars each, which had been transferred to it by the complainant, and which evidenced the balance due on the purchase price of certain live stock and farming implements sold by the complainant, Thompson, to the defendant Hill for use in the cultivation of said plantation, said note being secured by a chattel deed of trust on the personal property so conveyed; and it was further alleged and claimed that these two notes were also secured by a landlord's lien on the crops raised on the leased premises during the year 1923.

Thereafter the complainant filed an amended bill of complaint, alleging that the cotton produced on said leased premises during the year 1923 had been sold by the defendant Hill to W. R. Humphrey, who was doing business under the firm name and style of Humphrey & Co., and made the said Humphrey a party defendant to the bill of complaint.

The defendant Hill filed an answer to the original and amended bill of complaint, alleging that the complainant was holding the premises under a lease from the owner, Edmondson; that by the conditions of the lease between Edmondson and Thompson, the said Thompson had agreed to make certain improvements on said premises; that the complainant had failed to perform the terms of the lease under which he held said premises; that in order to protect his lease on said premises, he (Hill) was forced to perform the conditions of the lease existing between his landlord and the said Edmondson, and in so doing he was forced to expend one thousand four hundred eighty-five dollars, leaving a balance of only fifteen dollars due on the rent for the year 1923, and this sum was tendered with his answer. He further pleaded his adjudication and discharge in bankruptcy as a bar to his individual liability for the one thousand five hundred dollar rent note and the two one thousand dollar-notes held by the Stewart-Gwynne Company, and made exhibits to his an-

swer the petition, schedule, and oath filed in the bankruptcy court, together with the order adjudicating him a bankrupt and his final discharge in bankruptcy.

The defendant Humphrey filed his answer to the original and amended bill, and made the same a cross-bill against his codefendant, Hill, making substantially the same allegations as contained in the answer of the defendant Hill in regard to the payment of the rent note by making improvements upon the premises; and he further alleged that the cotton produced on said premises during the year 1923 was purchased by him by the purchase of negotiable warehouse receipts evidencing the same, in the due course of trade, for a valuable consideration without notice; that prior to the purchase of said warehouse receipts by the said Humphrey, the said Thompson had waived his landlord's lien thereon and had constituted his tenant, Hill, as his agent for the purpose of selling and disposing of said cotton, and had clothed him with the *indicia* of ownership of the negotiable warehouse receipts evidencing the cotton, and, consequently, was estopped to assert any lien thereon against the defendant Humphrey, who had purchased the cotton as aforesaid.

Thereafter the Stewart-Gwynne Company filed its answer and made the same a cross-bill against the defendant Humphrey, and alleged substantially the same facts as charged in the original and amended bills, and also alleged that it was the holder of two notes of A. J. Hill for one thousand dollars each, evidencing the purchase money of certain live stock and farming implements sold by Thompson to Hill for use on the leased premises, such notes having been assigned by Thompson to the defendant Stewart-Gwynne Company, and that said notes were secured by a chattel deed of trust on the personal property conveyed; and also sought to assert a landlord's lien on the cotton produced on said premises which had been purchased by the defendant Humphrey.

The defendant Humphrey filed a demurrer to said answer and cross-bill, which demurrer was sustained with leave to amend. Subsequently thereto the Stewart-Gwynne Company filed its amended answer and cross-bill, to which the defendant Humphrey filed his answer, making the same a cross-bill against his codefendant, Hill, in which answer he alleged that the Stewart-Gwynne Company was not a *bona-fide* holder of said notes, for value, in due course; that the said Thompson by taking the chattel deed of trust on the personal property conveyed to secure said notes had thereby waived his landlord's lien on the crops; that prior to the assignment of the said notes to the Stewart-Gwynne Company, Thompson had also waived his landlord's lien on the agricultural products produced on said premises by constituting his tenant, Hill, his agent for the purpose of selling and disposing of said cotton, and therefore that the said Stewart-Gwynne Company had no landlord's lien on said agricultural products and on the cotton purchased by the defendant Humphrey; that he, the said Humphrey, purchased the said cotton by the purchase of negotiable warehouse receipts representing the cotton, for a valuable consideration, in due course and without notice; and that prior to the purchase of said negotiable warehouse receipts, the said Stewart-Gwynne Company had also waived its lien on said cotton, and had constituted the said Hill as its agent for the disposal thereof, and had clothed him with the *indicia* of ownership of the said warehouse receipts.

There were numerous motions, demurrers, and amendments to the pleadings, which are unnecessary to be here set forth, and the cause came on for final hearing on the original and amended bills of complainant and the answers thereto, and the cross-bills and answers thereto, and, upon the proof offered, the chancellor rendered a final decree dismissing the original and amended bills of complaint and the cross-bill of the Stewart-Gwynne Company, and from this decree, the complainant, Thompson,

and the cross-complainant, Stewart-Gwynne Company, have appealed to this court.

Over the objection of the complainant the court below admitted testimony to show that during the negotiations leading up to, and prior to, the execution of the written lease contract the complainant entered into an oral agreement with the tenant, Hill, constituting him the agent of the complainant to sell the cotton raised on the leased premises, and thereby waived his landlord's lien thereon. This testimony was objected to on the ground that it changed, altered, or varied the terms of the written lease contract, and we are of the opinion that this objection was well taken.

The rule that evidence of prior oral agreements is not admissible to contradict, alter, vary, or change the terms of a subsequent written contract which is plain, unambiguous, and complete on its face, is too well settled to require the citation of authority; and it is equally well settled that the legal effect of a written instrument cannot be contradicted, altered, or changed by parol evidence of prior agreements. *Campe* v. *Renandine,* 64 Miss. 441, 1 So. 498; 22 C. J. 1075, and authorities there cited. Section 2832, Code of 1906 (section 2330, Hemingway's Code), gives to every lessor of land an absolute and paramount lien on all agricultural products grown on the leased premises for the payment of the rent and money advanced to the tenant for supplies, and this statute enters into and forms a part of the lease contract as fully as if written therein; and the effect of this testimony as to an oral agreement between the landlord and tenant giving the tenant the right to dispose of the crops at will was to change or alter the legal effect of the written lease contract. Consequently, we are of the opinion that the admission of this testimony was erroneous.

Conceding for the purpose of this decision only that the sublessee, Hill, in order to protect his rights to and possession of the leased premises, would have been entitled to discharge his landlord's obligations, or cove-

nants to repair, under the original lease, and to set up the expenditures made for that purpose as a payment *pro tanto* of his rent, still, we are of the opinion that the evidence in this record is insufficient to support a finding that the tenant, Hill, was forced to make the asserted expenditures to protect his rights under the sublease, or to show with any degree of certainty the amount expended in the discharge of the complainant's obligations under the original lease. Consequently, the dismissal of the original and amended bills of complaint cannot be sustained upon the theory of payment of the one thousand five hundred dollar-rent note. A landlord's lien "is superior to the rights of the purchaser of the cotton" grown on the leased premises "or of the cotton warehouse receipts, whether he had notice of the landlord's interest or lien or not" (*Campbell* v. *Farmers' Bank,* 127 Miss. 668, 90 So. 436) ; and therefore, for the error in admitting testimony, as above indicated, the decree dismissing the original and amended bills of complaint must be reversed. Likewise, for the same error, the decree dismissing the cross-bill of Stewart-Gwynne Company must be reversed unless the landlord's lien to secure the two notes assigned to it was waived by the taking of a chattel deed of trust on the live stock and farming implements sold by the appellant Thompson to his tenant, Hill.

Appellant Thompson sold to his tenant, Hill, certain live stock and farming implements for a consideration of four thousand dollars; two thousand dollars cash, and the balance evidenced by two promissory notes for one thousand dollars each, which were afterwards assigned to the Stewart-Gwynne Company; and for the payment of the balance due on these notes this company, as cross-complainant, is asserting the statutory landlord's lien on the cotton produced on the leased premises for the year 1923, and purchased by the appellee Humphrey. When appellant Thompson sold his personal property, he took from the purchaser a chattel deed of trust thereon, and the appellee contends that by so doing he carved

out an additional and inconsistent security and thereby waived and extinguished the statutory landlord's lien.

It is the established doctrine in this state that a statutory lien is not waived by taking other security, as would be the case of the equitable vendor's lien, unless the security taken is inconsistent with that given by law. In the case of *Smith* v. *Butts,* 72 Miss. 269, 16 So. 242, the court, speaking through Chief Justice Cooper, said:

"The weight of authority seems to be, and probably the better view is, that, where a lien is given by law, but the person entitled thereto, in making his contracts, takes other and different security, he thereby waives the lien given by law, and must rely upon the security he has stipulated for. In most of the courts these statutory liens are held not to differ essentially from the equitable lien of a vendor, and the same rules are applied to them. But in this state a different rule prevails, for, in *Parberry* v. *Johnson,* 51 Miss. 291, it was held that the lien of a mechanic was not waived by taking other security, as would be the case of the equitable vendor's lien. Nearly twenty years have elapsed since this decision, and our laws have twice since been codified without changing the rule. We are therefore unwilling to disturb it, and in cases in which the security taken is not inconsistent with the existence of the statutory lien, the mere fact that other security is taken does not afford a presumption of a waiver of the statutory lien."

When the landlord sold this personal property to his tenant for use on the leased premises, he had both the statutory landlord's lien on the crops raised on the leased premises, and the statutory purchase-money lien or the property itself for the balance of the purchase price thereof; and the chattel deed of trust taken upon the property sold was not such additional and inconsistent security as would constitute a waiver of the statutory liens.

On behalf of the appellee A. J. Hill, it is contended that his adjudication and discharge in bankruptcy, which

were pleaded and proven on the trial of the cause, relieve him of all personal liability on the rent note due appellant Thompson, and also on the notes held by Stewart-Gwynne Company. The record discloses that the one thousand five hundred dollar-rent note was listed by the appellee Hill in his schedule of liabilities filed with the petition in bankruptcy, and that proper notice of the pendency of this bankruptcy proceeding was given to the appellant Thompson; and it is conceded by counsel for the appellants that the appellee Hill is thereby discharged from personal liability for this indebtedness and that no personal decree can be taken against him thereon. The record affirmatively shows that the two notes held by the appellant Stewart-Gwynne Company were not listed in the schedules filed with the petition in bankruptcy, and it fails to show that any notice of the pendency of this bankruptcy proceeding was given to the Stewart-Gwynne Company, the holder of these notes in due course. Consequently, the appellee Hill was not relieved of personal liability on these notes. Section 9601, U. S. Comp. Stat. 1918.

The decree of the court below will therefore be reversed and the cause remanded.

*Reversed and remanded.*