JUDD v. DELTA GROCERY & COTTON Co.

(In Banc.   Dec. 31, 1923.)

[98 South. 243. No. 23123.]

LANDLORD AND TENANT.   *Landlord held estopped to assert landlord's lien on crops.*

Where the testimony shows that a tenant rented a plantation from the landlord for an annual money rental, and that the tenant with the knowledge and consent of the landlord each year sold the crops, the landlord by this course of dealing constituted the tenant his agent for the sale of these crops, and is estopped to assert the landlord's lien against an innocent purchaser or a broker who sold the crop at the request of the tenant, and accounted to the tenant for the proceeds thereof.

APPEAL from circuit court of Coahoma county.
HON. GREEK L. RICE, Judge.

Suit by F. E. Judd against the Delta Grocery & Cotton Company. Judgment for defendant, and plaintiff appeals. Affirmed.

*Maynard, Fitzgerald & Venable,* for appellant.

There is no contention in this case that the plaintiff owned the Rucks Plantation, or that the cotton amounting to one hundred ninety-four bales, raised on the Rucks Plantation was disposed of by the Delta Grocery and Cotton Company, nor is there any contention that the rent of eight thousand dollars, due by E. W. Judd to his father, F. E. Judd, has not been paid. But the sole point that seems to be made by the defendant is that E. W. Judd, by his course of dealing with his son, has waived his rent to the Delta Grocery and Cotton Company for the supplies. Also, it is intimated that the Delta Grocery and Cotton Company did not convert the cotton but sold it as factors. This point we will take up first.

In the case of *Peets & Norman* v. *Baker,* 95 Miss. 576, 48 So. 898, it was held by this court that: "Where a tenant without having paid his rent delivered his crop of tomatoes to merchants with whom he had an open account, with the understanding they were to ship them out of the state and credit the proceeds of the sale to his account, which was done, it constituted as against the landlord a conversion of the tomatoes in this state, rendering the merchant liable to the extent of the landlord's lien (Code 1906, section 2832) for the rent which did not exceed the proceeds of the crop."

Of course the amount of cotton received by the Delta Grocery and Cotton Company exceeded twenty-five thousand dollars and the rent was only eight thousand dollars. It is immaterial whether a price was agreed upon at the time of the delivery of the goods to the merchant. They having been received for sale, proceeds to be applied to the tenant's account, the only thing which remained to be done was to receive the returns of the sale and apply the same. This amounts to a conversion as against the landlord. *Peets* v. *Baker, supra.*

"The delivery of goods by a debtor to a creditor in payment of his debt constitutes a sale and not a pledge,

which is a bailment to secure the payment of a debt or the performance or some other act in which the pledgor only acquires a special property in the thing pledged." *Trenholm* v. *Miles*, 102 Miss. 835, 59 So. 930.

And in the same case: "When personal property is delivered as security, the transaction is a pledge. But if goods are delivered to a creditor in payment of the debt, the transaction has the effect of a sale."

The case of *W. L. Robinson & Company* v. *Weathersby*, 101 Miss. 724, 57 So. 983 is ample authority as to the fallacy of any contention on the part of the appellee to the effect that the plaintiff, F. E. Judd, and his renter, E. W. Judd, occupied the relation of vendor and purchaser, or agent and principal, and in that case also it was shown that the renter occupied the land under a contract of purchase as is claimed in this case, and in addition that there was no duty on the part of the landlord to notify the merchant that he was crediting the tenant at his own risk.

In the case of *Eason* v. *Johnson*, 69 Miss. 371, 12 So. 446, this court said: "The right of the landlord to recover from one to whom the agricultural products grown on the premises have been sold by the tenant, is not affected by the want of knowledge by the purchaser of the fact that the rent is due and unpaid. The lien exists by virtue of a positive law, and the rule of *caveat emptor* applies to all who purchase from the tenant."

"Neither ignorance of the tenancy or false statement of the tenant as to his authority in the premises can defeat the lien of the landlord on the agricultural products." *Warren* v. *Jones*, 70 Miss. 202, 14 So. 25.

It is attempted in this case to set up an estoppel but— "As a corollary to the proposition that the party setting up an estoppel must have acted in reliance upon the conduct or representation of the party sought to be estopped, it is essential as a general rule that the former shall not only have been destitute of knowledge as to

the real facts of the matter in controversy, but should have been without convenient or ready means of acquiring such information." 21 C. J. page 1129.

It is well known that a public record is an available means of knowledge, and one who does not take advantage of this by inspection cannot claim an estoppel.

Mr. Bouldin, the secretary and treasurer of the Delta Grocery and Cotton Company, attempted very lamely to blame F. E. Judd, the owner of the plantation, for the condition of affairs and stated (which however was excluded by the court) that in 1915 or 1917 F. E. Judd was in his office and introduced him to his son, E. W. Judd, and told him he was coming down to take charge of the place. But even Mr. Bouldin does not say that any arrangements were ever made with regard to furnishing Mr. Judd, nor had the Delta Grocery and Cotton Company ever furnished Judd before the year 1920. So, there certainly was no course of dealing between any of the parties.

At the conclusion of the trial of this cause, the learned judge in the court below gave a peremptory instruction for the plaintiff, which was correct. A motion for new trial was made and the judge reversed his ruling and gave a peremptory instruction for the defendant, thereafter overruling the motion for new trial by the plaintiff, and the plaintiff now appeals this case.

The reason for the change of mind of the judge in the lower court was this, and this only. Three cases were read to his honor being the following: *Phillips* v. *Thomas,* 91 So. 420; *Powell* v. *Tomlinson,* 92 So. 226; *Scott & Garrett* v. *Green River Lumber Company,* 116 Miss. 524, 77 So. 309.

In the motion for new trial the following "new evidence" was presented to the court, to-wit: An agreement of counsel was entered into showing that on January 1, 1920, Elmer W. Judd, the renter, was the owner of the west half of the northwest quarter of section 32,

township 26, range 3 west, in Coahoma county, Mississippi, and that there was no encumbrance on said land. And by the said agreement of counsel it was shown that Elmer W. Judd intended to give the Delta Grocery and Cotton Company a deed of trust on the said west half of the northwest quarter of said section 32, but instead conveyed the west half of the northwest quarter of section 31 by mistake.

With this "new evidence," it was argued to the court that under the three cases above cited, it was the duty of F. E. Judd to attach and distrain for rent all of the property of the renter, E. W. Judd, before going upon the Delta Grocery and Cotton Company. Of course, it is plain to this court that neither Elmer Judd nor his father knew that he had not conveyed the eighty acres of land that he owned to the Delta Grocery and Cotton Company, as well as to the Planters Bank, and Mr. F. E. Judd himself states on oath in the court that he investigated and did not find that E. W. Judd had any property of any kind, but that he, E. W. Judd, told him, his father, that it was all under mortgage and that he had no property. E. W. Judd went into bankruptcy shortly after January 1, 1921.

A landlord has no lien on the property of the tenant other than agricultural products. *Richardson* v. *McLaurin,* 69 Miss. 70, 12 So. 264; *White* v. *Miazza-Woods Construction Company,* 122 Miss. 213, 84 So. 181.

In the first place, the case of *Scott & Garrett* v. *Green River Lumber Company,* was a case wherein the landlord, Green River Lumber Company, filed suit against Scott and Garrett for three hundred forty-six dollars, and thirty-two cents, being the alleged amount of rent due by one J. S. Norris to the Green River Lumber Company, Scott and Garrett having purchased products grown upon the leased premises. Scott and Garrett contended that it was the duty of the Green River Lumber Company to apply any money which they had in their hands

to the indebtedness of Norris and that the Green River Lumber Company had no right to pay Norris a large amount of money and then sue them, Scott and Garrett, for the rent.

The case of *Powell* v. *Tomlinson,* has no application to the case at bar. In that case the landlord had security by deed of trust, and did not foreclose the same but proceeded against converters of the cotton, not of the tenant himself, but a sub-tenant.

*Cutrer, Smith & Cutrer* and *W. T. Covington, Jr.,* for appellee.

The undisputed testimony in this case brings us within the rule laid down in the case of *Phillips* v. *Thomas,* 91 So. 420, wherein this court recently held that where a landlord in the course of dealing between himself and his tenant over a long period of time, permits the tenant, with his knowledge, to dispose of the cotton grown on the leased premises, this action constitutes the tenant the sales agent of the landlord. In such case, where the tenant fails to execute the trust reposed in him, and fails to pay the rent, the landlord must bear the loss, and not the buyer.

The case of *Seavey & Sons* v. *Godbold,* 99 Miss. 116, is in line with the case first cited, and was cited with approval in *Phillips* v. *Thomas,* 91 So. 420.

The rule is also announced in 25 C. J. at page 412, as follows: "The factor is not liable for conversion where he has been misled through the act of the owner, or of his agent, or where he obtains possession and sells the goods with the consent of the owner."

In the case here, the actions of the father in permitting his son to handle the cotton from year to year, caused the injury to appellee, and appellant is estopped to deny the authority of the son to dispose of the cotton. *Hall* v. *Box,* 94 So. 221.

The law is well established in Mississippi that the landlord cannot sit idly by, make no efforts to obtain the amount of his rent from his tenant, when he could do so by the exercise of reasonable diligence, and look merely to the purchaser of the cotton to satisfy his rent. Appellant, after his arrival here in January, 1921, could, by requesting the appellee to turn it over to him, have secured money credited to E. W. Judd from the sale of some of this cotton. In April this money was turned over to E. W. Judd by appellee without notice. As was said by this court in the case of *Scott & Garrett* v. *Green River Lumber Company,* 116 Miss. 524: ''Where an injured party finds that a wrong has been perpetrated on him, he should use all reasonable means to arrest his loss. He cannot stand idly by and permit the loss to increase and then hold the wrongdoer liable for the loss which he might have prevented.''

The case of *Applewhite* v. *Nelms,* 71 Miss. 482, holds that the duty is upon the landlord to seize the property of the tenant under distress, and exhaust it before proceeding against the purchaser of the crops, who acted in perfect good faith. In our case here, the landlord did not look to his alleged tenant for the rent. The law is well settled that a creditor may make such applications of payments on the indebtedness of the debtor which he may see fit. Jones on Mortgages, section 908.

*Franklin & McGehee,* in reply brief for appellant.

We shall devote this brief, in reply to the brief recently filed on behalf of appellee, principally to the question of whether or not under the facts and circumstances of this case the appellee can defeat its liability to the appellant, even though it could be successfully contended by the appellee that the appellant constituted the tenant, E. W. Judd, his agent in the matter of disposing of the cotton in question, and remitting to the

appellant, as his landlord, the rent due him on the Rucks plantation for the year 1920.

If the most favorable construction is placed upon all the testimony on the question of the tenant having been permitted to sell the cotton grown on this plantation during each of the years, 1917, 1918, 1919. and 1920, it would only show that the tenant was permitted, not authorized, to sell the cotton during each of said years, and to remit out of the proceeds of the sale the rent due to the appellant, as his landlord, and the course of dealings in this record, as testified to, does not show that the tenant during either of the years prior to 1920, was permitted to sell the cotton and apply the proceeds to the payment of his own individual debt to the buyer of such cotton, or with authority to such buyer to turn over the remainder of the proceeds of sale, if any, to other creditors of the tenant to the exclusion and in defeat of the payment of the landlord's payment for rent. The testimony shows that as to the crop of 1920 the proceeds of the sale were not turned over to the tenant, either as the supposed agent of the landlord or otherwise.

If the tenant should be admitted by us, for the sake of argument, to be the agent of appellee, the landlord, to sell the cotton during the year 1920, and remit the rent, as it was his custom to do during former years, then we respectfully submit that the only way for the appellee to have discharged its responsibility to the landlord would have been to have turned over the proceeds of the cotton for the year 1920 to the tenant, as the agent of the landlord, to be remitted by the said alleged agent to the landlord in payment of the rent.

If the tenant, E. W. Judd, was the agent of appellant, the landlord, to sell the cotton and remit the rent, the appellee knew that the tenant, as the agent of the landlord, had no right to have one-half of the proceeds applied by appellee to the payment of the tenant's own individual debt to the appellee, and that he had no right to have

the appellee apply the remainder of the proceeds of such cotton to the payment of an indebtedness due another creditor of such tenant. In 70 L. R. A., page 319, in the case of *Merchants & M. Nat. Bank* v. *Ohio Valley Furniture Company,* it was held as the principle of the law of agency that there is: "A limitation imposed by law on the power of every agent, general or special, of which all persons must take notice, namely, that an agent has no power to use his office otherwise than for the benefit of his principal;" when he undertakes to exercise it for a purpose which can in no way benefit his principal, but will benefit himself or some third person, he places himself in a position in which the law determines that he is outside the scope of his agency, and the person who deals with him in such a position will not be heard to say he is ignorant of the want of authority, for ignorance of the law excuses no man.

On this point the rule is also stated in 2 Corpus Juris, page 883, as follows: "Property used to pay or secure agents debts—Where an agent, as such, having the general authority to sell, transfers his principal's goods to a third person in payment of, or as security for, the agent's own debt, the principal may as a general rule recover from the third person the goods so transferred, or the value thereof."

In support of the above announcement of the rule there is cited in the note in 2 Corpus Juris, page 883, aforesaid, United States supreme court and state supreme court decisions, in at least half of the states of the Union. :

In 21 R. C. L., page 910, the rule is stated as follows: "Every agency is subject to the legal limitations that it cannot be used for the benefit of the agent himself, in the absence of an agreement that it may be so used; and as this is a matter of law and not of fact, all persons must take notice of it." Citing numerous authorities including 70 L. R. A., page 319, *supra.*

Again, in 21 R. C. L., page 913, it is said: "The person who knowingly receives money or property of the

principal from the agent in payment of the latter's debt, does so at his peril, and if the agent acted without authority the principal, on proof of this fact, is entitled to recover." Citing 73 Miss., page 787, 14 L. R. A., page 234 and note.

This court held, in the case of *Warren, et al.* v. *Jones,* 70 Miss. 202, that: "Neither ignorance of the tenancy, or false statements of a tenant as to his authority in the premises can defeat the lien of the landlord on the agricultural products."

It was also said in the case of *Eason* v. *Johnson,* 69 Miss. 671, the opinion of the court being in full as follows: "The right of the landlord to recover from one to whom the agricultural products grown on the demised premises have been sold by the tenant, is not affected by the want of knowledge by the purchaser of the fact that the rent is due and unpaid. The lien exists by virtue of a positive law, and the rule *caveat emptor* applies to all who purchase from the tenant."

Our court has also held in a recent case that the declarations of an agent made out of court are incompetent to establish agency. Therefore, all the testimony in this record as to what the tenant said to the appellee as to his authority, was wholly incompetent, and on objection duly made by the appellant, the same should have been excluded from the record.

We respectfully submit that if it should be held that the agent actually had such authority from the appellant, or that the appellant held him out as having authority during the years 1917, 1918, 1919 and 1920, to sell the cotton and remit to him the rent, still it cannot be successfully contended that the tenant, as such agent of the landlord, had the right to apply a part of the proceeds to the payment of the tenant's own debt, and to turn over the remainder of such proceeds, through the agency of the appellee, to the debts due by the tenant to other creditors.

In conclusion, we respectfully submit that this is a case where the purchaser of the cotton, because the appellee was the purchaser, was guilty of a conversion of the same (under the decisions of *Peets & Norman* v. *Baker,* 95 Miss. 576, and *Trenholm* v. *Miles,* 102 Miss. 835), charged with notice of landlord's lien applied half of the proceeds thereof to the payment of the tenant's own individual debt to the appellee, and where such purchaser, in pursuance of the statement made to it by the Planters Bank at the time appellee took its trust deed from the tenant, that the bank would expect the crop to be applied to its debts due from the tenant, turned over to such creditor bank the remainder of the proceeds knowing, and having good reason to know, from the statements formerly made to it by said bank, that it would be so applied to the tenant's debt to the bank when turned over to it by the appellee.

*Cutrer, Smith & Cutrer,* in reply brief for appellee.

From an examination of the facts as disclosed by the record, it is manifest that there are several nearly related, but clearly distinct reasons why the court below ultimately reached the proper conclusion, if it be conceded that the relation of landlord and tenant existed between appellant and E. W. Judd, and why it is neither morally, legally nor equitably right that appellant should ever recover from appellee, upon the supposed cause of action sought to be asserted in this suit.

It cannot be denied that appellant intentionally and deliberately bestowed upon E. W. Judd the general and unrestricted power as his agent, to sell the cotton grown on the Rucks place during 1920, and that he had affirmatively agreed that E. W. Judd as such agent, should collect all the proceeds of the sales, and that having adopted and accepted this method or agency as his sole reliance through which to insure the payment of the alleged rent owing to him, the same being the agreement of E. W.

Judd, the said agent, to remit to him the alleged rent from the proceeds of the sales, and the said E. W. Judd having defrauded him in this expectation, he cannot now recoup the loss which he alleges he has sustained and recover the same from appellee—the loss incident to the faithlessness of the agent being one which must fall on the principal and not on an innocent third person.

Neither can it be denied that the appellant placed E. W. Judd in full possession and control of his property in Mississippi, and accompanied this investiture with the statement to appellee, that the said E. W. Judd was entirely reliable; that he would have the exclusive control and management of the property, and would be in charge of and attend to all his business thereon; that he gave out no notice to appellee of any change in the relationship which his son bore or was to bear towards him and his property, while his said son was to all intentions and purposes, so far as the appellee and the public generally were concerned, in charge of the property and of the disposition and sale of all the cotton grown thereon; that his said son had habitually, at his pleasure and discretion, with the knowledge of appellant, sold and disposed of all the cotton grown on the property during 1916, 1917, 1918 and 1919, and likewise in 1920, and that covering this period, appellant had suffered all the cotton grown on the property during each of said years, annually, to be freed from any and all liens for rent, by authorizing and empowering his said son to sell the cotton discharged from all claims in his behalf, and had annually, relied solely on the good faith of his said son to remit him all rent claimed by him, from the proceeds of said sales; and that appellee having no knowledge of any claim of appellant for rent for 1920, and having in 1920, acted in good faith in the usual and habitual manner in which cotton had theretofore, with the knowledge and approval of appellant, been handled and disposed of by E. W. Judd for appellant, through sales made by it and by other cotton factors and commission

merchants, the appellant is now estopped to repudiate the effects of such a course of conduct, to the injury of appellee, who has in good faith relied thereon.

The relative rights of the parties to this litigation are that appellant as an alleged creditor of a principal debtor, to-wit—his son, E. W. Judd, is pursuing appellee for an alleged debt which he says is owing to him by the said E. W. Judd, and for which appellee is charged to have become liable as an involuntary surety by operation of law, because of its having sold cotton in the usual course of its business,ʹ by the delivery of negotiable warehouse receipts, without any knowledge of appellant's alleged right or claims, if any, he had thereto; and that when appellant was apprised of and knew all the facts, he not only refused promptly, or at all, to pursue the principal debtor for the collection of any part of his alleged debt, but he suffered the principal debtor, to the prejudice of the surety, to sell and dispose of his property which was subject to be taken by appellant in satisfaction of his alleged claim, and to place the same beyond reach, and the surety thereby suffered irreparable loss and injury, and is thereby discharged from all liability on account of its supposed suretyship.

The relationship of principal and agent existed between appellant and E. W. Judd, so far, at least, as the sale of cotton was concerned, and we contend that E. W. Judd was actually so appointed by the appellant. At any rate, the course of conduct which uniformly prevailed between the appellant and E. W. Judd, ''amounted to a virtual appointment of E. W. Judd,'' ''as appellant's agent to make a sale of the cotton on which he had a landlord's lien; and if he failed to carry out the trust thus reposed in him, and make due return of the proceeds, innocent persons cannot be made to suffer on account thereof.''

The rule we contend for was laid down by this court very clearly, and without equivocation, in the case of *Seavey* v. *Godbold,* 99 Miss. 113. In that case, the rela-

tionship between the landlord and tenant, who had sold the cotton, was one where a money rent was to be paid, and where the rent was not to be a part of the crop. The conclusions we contend should be reached in this case, on the facts disclosed by this record, are the same conclusions arrived at in the case last cited, and they clearly show that the appellant "is estopped to deny that E. W. Judd had authority to dispose of the cotton in question."

The same question was again presented to the court in the case of *Phillips* v. *Thomas*, 128 Miss. 729. The facts in that case, where the plaintiff was seeking to recover from the vendee of cotton claimed to be subject to a landlord's lien, are strikingly like the facts in the case at bar. The conduct of the appellant has been such as to estop him from seeking to collect the alleged rent from appellee.

If there ever was a rental contract between appellant and E. W. Judd, it was an inartificially and loosely constructed arrangement, as will readily be seen by considering the evidence of both the parties on that point. If there was an agreement for payment, it is most likely that it was waived in E. W. Judd's behalf, as was the case in 1918, 1919 and 1921. If it was waived in these years, before, and after, why not in 1920?

Giving full effect to the claim in its entirety as asserted by appellant against appellee, the relation that has been created between them is that of principal and surety. The principal debtor—really the only debtor—is E. W. Judd, for whose debt appellant is seeking to hold appellee as a surety, so constituted from the force of circumstances.

The case of *Applewhite* v. *Nelms*, 71 Miss. 482, announces the rule upon which we rely. In that case, Applewhite was a sub-tenant whose crops had been attached for rent owing to the landlord, Nelms, by Dunsom and Rogers, the lessees from Nelms, and his principal debtors. Applewhite contended that he was only a surety for the payment of the rent, and that under the circum-

stances, all the property of Dunsom and Rogers should be exhausted before resort could be had against him or his property.

The same principle came up for consideration a second time, in the case of *Scott & Garrett* v. *Green River Lumber Company,* 116 Miss. 524.

In *Powell* v. *Tomlinson,* 129 Miss. 354, Powell had leased land for 1920, to one Lesure, who had sublet a part of it to Crane. Tomlinson furnished Crane, and took a deed of trust on his crop to secure the advances. Crane paid his rent to Lesure, and sold the rest of his crop to Tomlinson. At the end of the year's business, after paying Powell all the proceeds of his crop, Lesure owed Powell a balance of one hundred twenty-three dollars and thirty-seven cents, and Powell sued Tomlinson for the balance, alleging a conversion of the crops by Tomlinson, growing out of his dealings with Crane. At the time the suit was brought, Powell held deeds of trust from Lesure as security for his debt. The holding of this security was set up by Tomlinson in defense of the suit.

The court cited with approval, its decisions in the cases of *Applewhite* v. *Nelms,* and *Scott & Garrett* v. *Lumber Company,* to the effect that a person other than the lessee, whether a sub-tenant or a purchaser, as Tomlinson was, is a surety only, for the principal debtor, who was and is the lessee; "That the landlord was bound to use reasonable means to (satisfy or) reduce his claim against the purchaser from the tenant, and, therefore, he would not be permitted to throw away an opportunity to collect his debt by other means and resort to a purchaser in good faith from the tenant, of the agricultural products."

Argued orally by *W. H. McGehee* and *Gerald Fitzgerald* for appellant, and by *J. C. Cutrer,* for appellee.

Sykes, J., delivered the opinion of the court.

The appellant, F. E. Judd, sued the appellee, Delta Grocery & Cotton Company, in the circuit court for the sum of eight thousand dollars. The material averments of the declaration are that plaintiff (the appellant) is the owner of a certain plantation in Coahoma county which he rented to his son, E. W. Judd, for the year 1920 for the sum of eight thousand dollars evidenced by his promissory note which is past due and unpaid; that E. W. Judd delivered to the defendant (appellee) one hundred thirty-three bales of lint cotton during the latter part of the year 1920 which was raised on the leased premises; that defendant sold and disposed of this cotton, but has failed to pay the rent to the landlord; that plaintiff held a lien on this cotton; and that he has a cause of action against the defendant because the defendant sold and disposed of this cotton. There was a plea of the general issue, and notice of special matter was set up. In this notice it was stated that the defendant was a cotton factor, engaged in the handling and sale of cotton delivered to it; that during the year 1920 it lent certain money to E. W. Judd and took a deed of trust on his cotton crop for that year, stipulating that it was to be shipped to the defendant, sold by it, etc., that it had no actual knowledge of any rent due the plaintiff for that year; that it disposed of the cotton in accordance with its deed of trust, and duly accounted to E. W. Judd therefor; that the plaintiff, F. E. Judd, permitted his tenant and son, E. W. Judd, to dispose of the crop. It is unnecessary to go further into the details of the special matter elaborately set out.

The cause was first tried, and a peremptory instruction was given the appellant. A motion for a new trial was duly made, and an agreement of counsel entered into, whereby at least upon this motion the court could determine as a matter of law whether or not either side was entitled to a peremptory instruction. On this mo-

133 Miss.—56

tion the court gave a peremptory instruction in favor of the appellee. There is some controversy between the parties as to whether or not this was in fact a peremptory instruction or the agreement was for the court to decide both law and facts.

For the purpose of this opinion, however, we will treat it as a peremptory instruction given the defendant. From such judgment this appeal is prosecuted.

It is only necessary for us to consider on this appeal one question, and that is, whether the appellant, F. E. Judd, by his course, conduct, and dealing for several years, including the year in controversy permitted his tenant and son, E. W. Judd, to dispose of the crops raised upon the leased premises and pay the rent out of the proceeds derived from a sale of the crops; whether the testimony in this case does not show that the landlord, with express knowledge, permitted the tenant to dispose of the crops, and thereby constituted him his agent for their sale and is not now estopped to assert a landlord's lien.

The testimony in this case shows that E. W. Judd had rented this plantation from the appellant for at least four years, for an annual money rent; that during all of this time the tenant, with the knowledge of the landlord, disposed of the crops. The appellant, F. E. Judd, testified that he did not supervise E. W. Judd in the handling of the cotton, and permitted him to sell the cotton and remit to him (the landlord) the rent; that that was the way he had always done since 1917. The effect of this testimony is repeated many times in the examination of the appellant. There is also testimony in the record of the appellant that during the fall of 1920 he received a letter from his son, stating he had disposed of a certain number of bales of cotton, and clearly showing that he (the tenant) was in entire control of the cotton, and disposed of it as he saw fit. In short the

record shows that the course of dealing between the landlord and tenant was that the tenant disposed of the crop with the knowledge of the landlord, that the landlord asserted no rights as to its disposition, but permitted the tenant to control it, and that the tenant paid him money rent for the place. This course of dealing, this knowledge and permission of the landlord, constitute in effect an appointment of the tenant as his agent to dispose of the cotton on which the lien existed. If the tenant failed to carry out this trust and pay the rent, then the loss must fall on the landlord who clothed him with this authority, rather than on an innocent party. This doctrine is announced in the case of *Seavey & Sons* v. *Godbold,* 99 Miss. 113, 54 So. 838.

As this question disposes of the case, it is unnecessary to go further into details, or consider any other questions argued by counsel.

The judgment of the lower court is affirmed.

*Affirmed.*