555 So.2d 1024 (1990)
PLANTERS BANK & TRUST COMPANY, C.E. Bowden, III, and Ruleville-Drew Elevator Company, Inc.
v.
Ben SKLAR, Executor of the Estate of Sylvia L. Sklar, Deceased.
No. 07-58790.
Supreme Court of Mississippi.
January 10, 1990.
*1025 William D. Belk, Jr., Clark Davis & Belk, Indianola, William A. Pepper, Jr., Cleveland, P.J. Townsend, Townsend McWilliams & Holladay, Drew, for appellant.
Alfred A. Levingston, Levingston & Levingston, Cleveland, for appellee.
*1026 Before ROY NOBLE LEE, C.J., and SULLIVAN and PITTMAN, JJ.
SULLIVAN, Justice, for the court:
This cause begins with a July 2, 1986, complaint filed by Sylvia Sklar ("Landlord") to enforce a landlord's lien against defendants, C.E. Bowden III ("Cotton Buyer"), Ruleville-Drew Grain Elevator Company, Inc. ("Elevator"), Planters Bank and Trust Company ("Bank") and Gene Mitchell ("Mitchell"). Following a trial on the merits, the Chancery Court of the Second Judicial District Court of Bolivar County, the Honorable Harvey T. Ross, presiding, entered a decree in favor of the Landlord and against Cotton Buyer, Elevator and the Bank, in the principal sum of $4,488.52, and against Elevator and Bank in the additional principal sum of $2,573.48. The Chancellor further granted judgment against the Bank and in favor of the Cotton Buyer and the Elevator to the extent of their respective obligations to Landlord. From this decree, Cotton Buyer, Elevator and Bank appeal. Bank assigns as issues to be addressed:
1. The Chancellor erred in determining that the landlord had validly retained her landlord's lien.
2. The Chancellor erred in determining that the landlord's lien followed the proceeds from the sale of the tenant's crops.
3. The Chancellor erred in determining that the landlord had not waived her landlord's lien through her prior course of dealing.
4. The Chancellor erred in ordering the Bank to make restitution to Cotton Buyer and the Elevator.
Elevator and Cotton Buyer, as appellants and cross-appellees, assign additional issues:
1. Bank, having received the crop sale proceeds with full knowledge that its production loan, was subordinate to the landlord's lien should be required to pay the rent due.
2. There was a constructive trust relationship between the purchasers, Landlord and Bank.
The axis of this appeal is based on the lease of farmland, the tenant's sale of crops grown upon the leased premises, a lending institution's acquisition and use of the proceeds from that sale to satisfy the tenant's crop production loan, the tenant's partial payment of his rent, his subsequent bankruptcy, and the landlord's assertion of a statutory lien upon the proceeds of the crop sale.
In the years 1982, 1983, 1984, and 1985, Sylvia L. Sklar ("Landlord") leased approximately 353.1 acres of farm land in Sunflower County, Mississippi, to Gene Mitchell ("Mitchell"). Planters Bank & Trust ("Bank") financed Mitchell's farming operations for 1983, 1984, and 1985, taking as security a lien upon his crops, equipment and government payments.
The lease for the year at issue, 1985, was executed on December 27, 1984, and called for an annual rental fee of $14,124.00. The lease provided for semi-annual payments of $7,062.00 on February 10, 1985, and $7,062.00 on December 15, 1985, and pursuant to this Mitchell signed two promissory notes. The February payment was made timely, however, Mitchell failed to tender the December payment.
Mitchell sold his 1985 soybean crop to Ruleville-Drew Elevator Co. ("Elevator") and his 1985 cotton crop to E.W. Bowden & Company ("Cotton Buyer"). As payment for these crops, both Cotton Buyer and Elevator made their checks payable to Mitchell and the Bank, jointly, as directed by Mitchell. These checks were issued between November 11, 1985, and February 5, 1986. On or about January 21, 1986, Mitchell declared bankruptcy.
On July 21, 1986, Landlord filed suit against Bank, Cotton Buyer, Elevator and Mitchell, seeking discovery against all defendants and seeking judgment against Bank, Cotton Buyer and Elevator for $7,062.00 (one-half of the yearly rental rate) and accrued interest. Elevator and Cotton Buyer each cross-claimed against Bank seeking restitution for any sum they should be required to pay.
The chancellor entered a judgment against Elevator, Cotton Buyer and Bank *1027 in favor of Landlord for $7,854.53, plus interest, and rendered judgment in favor of Elevator and Cotton Buyer against Bank to the extent of payments by them to Landlord. The trial commenced on June 30, 1987.

I.

DID THE CHANCELLOR ERR IN DETERMINING THAT THE LANDLORD'S LIEN WAS VALIDLY RETAINED?
Before addressing this assignment of error, a preliminary matter must be resolved. Bank implies that its perfected security interest is superior to Landlord's statutory lien. § 75-9-104(b) of the Mississippi Code clearly excludes landlord's liens from Chapter 9, the Secured Transactions Chapter of the Uniform Commercial Code. As such, the priorities created in Chapter 9 do not apply to landlord's liens. Unless a landlord has expressly or impliedly waived the statutory lien, its rights are superior to all other interests, including those created by Chapter 9. "This exemption has been recognized by the vast majority of courts across the nation." Dwyer v. Cooksville Grain Co., 117 Ill. App.3d 1001, 73 Ill.Dec. 497, 499-500, 454 N.E.2d 357, 359-360, 37 UCC Rep.Serv. 252 (Ill. App. 4 Dist. 1983), and the cases cited therein.
Bank argues that because paragraph 16 of the lease contract does not specifically refer to the landlord's lien statute, Landlord, in effect, waived her right to this statutory lien. The crux of the assignment of error centers on an apparent typographical error contained in paragraph 16 of Landlord's lease which states:
16. Lessor reserves her Landlord's lien as provided by Section 85-7-51 of the Mississippi Code of 1972. .. .
Reference to the Mississippi Code reveals that § 85-7-51 is entitled "Death of a party not to abate suit." Bank argues that because this referenced section is unrelated to the reservation of a landlord's lien, the landlord failed to validly retain her lien. This argument ignores the fact that a landlord's lien is a creature of statutory law.

THE LANDLORD'S CROP LIEN
49 Am.Jur.2d, Landlord and Tenant, § 675 at 641 (1970) states:
[A] lien in favor of the landlord ... arises only from a statute creating such a lien, or from the agreement of the tenant giving a lien.
See also, 13 Harl, Agricultural Law, Farm Leases, § 121.05[2] (1989).
In Mississippi, § 89-7-51, Mississippi Code Annotated (1972), as Amended, creates the statutory crop lien. Couched in mandatory and unequivocal terms, this statute states:
(1) Every lessor of land shall have a lien on the agricultural products of the leased premises, however and by whomsoever produced, to secure the payment of the rent and of money advanced to the tenant. This lien shall be paramount to all other liens, claims, or demands upon such products. (Emphasis supplied).
(2) All articles of personal property, except stock of merchandise sold in the normal course of business, owned by the lessee of real property and situated on the leased premises shall be subject to a lien in favor of the lessor to secure the payment of rent. Such lien shall be subject to all prior liens or other security interest perfected according to law.
By arguing that Landlord did not retain her statutory lien, Bank chooses to ignore a basic tenet of statutory construction; that "shall" is mandatory and "may" is discretionary. Murphy v. State, 253 Miss. 644, 178 So.2d 692 (1965). Obviously, the Mississippi Legislature intended for a landlord's lien to be the rule and not the exception. Statutory language indicates that the legislature designed the landlord's lien to be superior to all other claims. This Court has stated that the landlord's lien exists by positive law and "that the lien created by law exists without writing or record." Newman v. Bank of Greenville, 66 Miss. 323, 337, 5 So. 753, 757 (1889).
"Without doubt, a landlord may expressly or impliedly, waive his right to claim a *1028 statutory lien upon the property of his tenant." 49 Am Jur 2d, Landlord and Tenant, § 693 at 654 (1970). In Mississippi, the burden is upon Bank to prove that Landlord expressly waived her landlord's lien. Thompson v. Hill, 147 Miss. 489, 112 So. 697 (1927).
The specific terms of this lease in no way imparts an intent by Landlord to expressly waive the protection afforded by this statutory creature. Bank's argument is shallow, frivolous, devoid of logic and totally without merit.

II.

DID THE CHANCELLOR ERR IN HIS LEGAL DETERMINATION THAT THE LANDLORD'S LIEN ATTACHED TO THE PROCEEDS OF THE CROP SALE?
As its second assignment of error, Bank asserts that a landlord's lien extends only to the crops which are grown on the leased premises and not to proceeds derived from their sale. Its position appears to be that because it was not actively involved in the sale, it is not obligated to account to Landlord for the unpaid rent.
The chancellor determined that the landlord's lien attached to the crop sale proceeds which Bank received and applied to Mitchell's crop production loan. As this determination answered a question of law and not fact, the familiar manifest error/substantial evidence rule does not prevent this Court from conducting a de novo review of the chancellor's finding. Cole v. National Life Insurance Co., 549 So.2d 1301, 1303 (Miss. 1989); Boggs v. Eaton, 379 So.2d 520, 522 (Miss. 1980).
In this case, Mitchell grew crops on Landlord's property and sold them to Cotton Buyer and Elevator. These purchasers, at Bank's and/or Mitchell's insistence, made their checks payable to Bank and Mitchell jointly. The proceeds were applied by Bank to the balance due on Mitchell's crop production loan, thus, excluding Landlord's claim for rent.
In its brief, Bank asserts that the landlord's lien extends only as far as the immediate purchaser of agricultural products and does not attach to the proceeds derived from such a sale. According to Bank, Mississippi jurisprudence has established, in these situations, that a landlord's remedy rests solely against the tenant and the purchasers of the crops. As authority, Bank cites Eason v. Johnson, 69 Miss. 371, 12 So. 446 (1891); Newman v. Bank of Greenville, 66 Miss. 323, 5 So. 753 (1889); Jones v. Stevens, 12 So. 446 (1892); and Crutcher v. Commercial Bank, 146 Miss. 404, 111 So. 569 (1927). A survey of these cases indicates that such a broad and categorical statement of law is unfounded and, hence, such authority is misplaced.
In Eason, the Court upheld the right of a landlord to recover from one to whom his tenant sold crops grown on the leased premises, whether or not the purchaser had knowledge of the fact that rent is due and unpaid. Nothing in this cited case limits a landlord's remedy solely to the purchaser. As such, Bank's reliance on this case is unfounded.
In Newman, landlord leased his plantation to tenant at a rental of $3500.00. In exchange, tenant executed two promissory notes, each for $1750.00. At that time, the tenant was indebted to a third party creditor and desired to secure future advances for the upcoming year. The creditor was unwilling to make additional advances without security. The landlord endorsed one of the rental notes in blank and presented it to his tenant along with a letter addressed to the creditor stating that he had surrendered the note to his tenant "which they are at liberty to use as they see fit." The tenant pledged this note to the creditor as security for the existing debt and for future advances. These facts estopped the tenant, the landlord and their other creditors from denying that the note was a valid debt and a lien on the agricultural products which were grown on the leased premises that year. The creditor, to whom the note had been pledged, was allowed to assert a lien upon a sufficiency of agricultural products, which had been provided other creditors, to satisfy the note.
*1029 The peculiar facts of the cited case and, in particular, the fact that the creditor had been assigned the tenant's rent note, certainly qualifies Bank's blanket assertion that the landlord's lien does not follow the proceeds. By reading Newman in this broad manner, Bank is molding the holding to fit the particular fact pattern which it has been dealt and, in so doing, is creating the principles of law needed to support its position. Newman should be limited to its unique factual situation. As the record before us indicates that Landlord did not expressly waive nor assign her landlord's lien to Bank, Newman is distinguishable.
Bank claims that Crutcher reaffirmed the principle that one who receives the proceeds of a crop sale is not liable to the landlord for unpaid rent. However, like Bank's other cited authority, Crutcher cannot be adjusted to the facts of this case. In Crutcher, landlord transferred its tenant's rent note to its creditor bank. Subsequently, the landlord waived its lien on the crops to allow its tenant to purchase supplies. The tenant executed the lien waiver to Crutcher. Crutcher was without notice that the landlord had previously transferred its tenant's rent note to the creditor bank. Likewise, the creditor bank was unaware that a waiver had been executed in favor of Crutcher. Tenant sold cotton grown on the leased premises to a buyer and turned the proceeds over to Crutcher, in payment of its debt. At no time was Crutcher aware that tenant's rent note had been transferred by the landlord to the creditor bank. The entire transaction of sale and purchase was between tenant and cotton buyer only. Crutcher merely held the warehouse receipts until tenant turned the sale proceeds over to him. The bank contended, and the lower court held, that by virtue of being the holder of the rent note, the bank held a landlord's lien over the cotton, that the lien was paramount to Crutcher's lien and that Crutcher was liable to the bank for the value of the cotton. In reversing, this Court cited Jones:
... one who merely receives money realized by the tenant from the sale of agricultural products, on which there is a landlord's lien for rent, is not liable to the landlord for such rent on the grounds of conversion. (Emphasis supplied).
146 Miss. at 413-414, 111 So. at 571.
The operative words in this holding have been highlighted. In the written opinion, not less than eight times, this Court refers to the fact that Crutcher did not know about the transfer of the rent note, or that he did not, in any manner, take part in the crop sale. Crutcher was absolved of liability not because he had received proceeds but because he was not on notice that the landlord had previously transferred the note. The basis for this Court's holding is the fact that Crutcher was an innocent party. As the record shows that Bank's involvement was not so detached, Crutcher is distinguishable.
Jones concerned a tenant's sale of cotton to a cotton buyer. Previously, the tenant had mortgaged the crops for supplies and used the crop sale proceeds to pay off the mortgagee. In an effort to enforce their landlord's lien, landlords brought suit against the buyer and the mortgagee. The circuit court's judgment against the cotton buyer was affirmed, however, the judgment against the mortgagee was reversed. In so doing, the Jones Court said:
He did not purchase the cotton, the sale of which gave rise to the litigation, nor was he in any way connected therewith. His collector simply received the proceeds of the sale after its consummation, from Bowman, the person found by the verdict to have been the tenant ... and credited it upon Bowman's indebtedness to him. His nonliability is perfectly manifest. (Emphasis supplied).
12 So. at 447.
Once again the operative terms have been emphasized. Crutcher and Jones strike a common chord in disallowing the attachment of a landlord's lien to proceeds where the receiver either "had nothing to do with" the sale or was not "in any way connected" with the crop sale. Though Bank did not actually harvest and market the crops, Bank was instrumental in prescribing the method of payment. In Jones, *1030 the mortgagee was an innocent party to the crop sale.
These cited cases do not stand as a universal maxim that proceeds shall not be subject to a landlord's lien. In determining whether a lien will be extended to include the proceeds of a crop sale, courts look to whether:
(1) the crop lender was aware of the landlord/tenant relationship;
(2) the crop lender was involved in the sale;
(3) the crop lender obtained a subordination agreement from the landlord;
(4) or, whether the landlord expressly or impliedly waived its statutory lien. (This will be discussed in the next assignment.)
The current scenario suggests: Bank had actual knowledge of Landlord's lien on the crops (it certainly had knowledge that the crops were derived from leased premises); Bank requested that its name be included on the proceeds check (hence, Bank, in some manner, took part in the sale of the cotton); and, Bank failed to obtain any type of subordination agreement from Landlord in order to be assured of priority (as the creditors in Newman and Crutcher did). From these observations, one could safely conclude that, if Landlord did not waive her priority, the landlord's lien should attach to the proceeds of the crop sale.
Ball v. Sledge, 83 Miss. 749, 756-757, 35 So. 447, 449 (1903), is a more accurate reflection of this Court's position on the landlord's lien/crop sale proceeds issue. There, Sledge leased certain farmlands from his landlord. Subsequently, Sledge granted a deed of trust on his crops, livestock and farming implements to Ball in order to secure advances for that year. Ball had actual notice of Sledge's rental contract with his landlord and actually paid a portion of Sledge's rent for him that year. Sledge never paid Ball. Ball sent his agent to collect the indebtedness from Sledge. Sledge gave the agent two bales of cotton, which were raised on the leased premises, and two mules to satisfy the debt. The agent sold the property, remitted some of the proceeds to Ball, and paid a small balance to Sledge. When Ball discovered that a balance still remained on Sledge's debt, Ball brought suit to recover this balance. In addressing the erroneous jury instructions given at the trial, this Court recognized a landlord's right to proceed against a tenant's creditor for unpaid rent:
[L]andlord has a prime lien on all the agricultural goods raised on the leased premises, to secure his rent ... it is admitted that appellants [Ball] had actual notice of the relation of landlord and tenant. Consequently the landlord could have legally asserted its lien for rent in arrears against appellants [Ball] for the value of all cotton produced on the leased premises, received by them in this state from the tenant. One who receives cotton from a debtor, and applies the proceeds thereof to the satisfaction of an existing indebtedness ... if afterwards forced to pay such proceeds to one holding a paramount lien on the cotton, is not deprived of his right to demand and enforce repayment from his debtor. (Emphasis added).
Our jurisprudence indicates that one factor we have looked to in ranking the relative priorities of a landlord and third party creditor in a clash over crop sale proceeds is whether the party who received the proceeds from the crop sale had notice that the proceeds were derived from the sale of crops which were raised on leased premises. The fact that Bank was not the purchaser of the crops should not function to shield it from accountability when the record conclusively shows that it had actual notice that the lands were leased and when it failed to take steps to prime Landlord's superior position. See Cavins v. Planters Bank & Trust Co., 187 F.2d 906 (5th Cir.1951) (landlord had superior lien to proceeds after crop lender had received a sufficient sum to discharge loan secured under deed of trust executed by tenant and landlord; a subsequent loan made by lender to tenant without securing waiver of landlord's lien was not superior to landlord's claim for rent).
*1031 A far more accurate statement of law than that recited by Bank is: Unless the crop lender has taken steps to subordinate a landlord's statutory priority, the landlord's interest in the proceeds of a crop sale will be paramount to the crop lender who receives the proceeds. The landlord has the inside track in a priority clash over the proceeds of a crop sale.
While no Mississippi cases have been found which are precisely on point, several cases from other jurisdictions have resolved similar problems in the landlord's favor. They have adopted the posture that a landlord's crop lien follows the proceeds derived from the sale of crops if the person who received the proceeds had notice of the lien. Meyer v. Hawkeye Bank & Trust Co., 423 N.W.2d 186, 188-89 (Iowa 1988), (Bank which held perfected security interest in all crops grown on tenants leased farm and received proceeds from crop sale with full knowledge that landlord had lien on the crop held proceeds as a constructive trustee of for the landlord); Dwyer v. Cooksville Grain Co., supra., (Landlord's statutory crop lien for rent has priority over bank's security interest in proceeds from sale of crops grown on rented land); Webb & Aigner v. Darrow, 227 Ala. 441, 150 So. 357 (Ala. 1933), (Landlord's lien follows the proceeds of the crop as long as they may be identified in the hands of the tenant or other person with notice of such lien).
The record reflects clearly that Bank was aware that Mitchell leased the farmland from Landlord. Bank, as a party sophisticated in agricultural transactions, also knew that a landlord's lien attached to the crops grown upon the leased land. The chancellor was correct in his legal finding that the lien attached to the proceeds of the crop sale which Bank received. Further, the record establishes that substantial credible evidence existed from which it could be determined that the Bank had knowledge of a landlord's lien. As such, the Bank's argument fails and this assignment of error is without merit.

III.

DID THE CHANCELLOR ERR IN HIS FACTUAL FINDING THAT LANDLORD DID NOT WAIVE HER STATUTORY LIEN?
In opposition to the chancellor's finding that there was never a waiver of the landlord's lien, Bank argues that Landlord, by course of conduct, waived her statutory lien. As this was a factual determination, this Court's scope of review is limited and governed by the manifest error/substantial evidence standard. Gulf Park Water Co., Inc. v. First Ocean Springs Development Co., 530 So.2d 1325 (Miss. 1988), among other cases cited therein.
The case of Phillips v. Box, 204 Miss. 231, 239, 241, 37 So.2d 266, 268 (1948), is dispositive of what is required to prove a landlord's waiver of its statutory lien:
Waiver is not susceptible of definition in terms of special instances. Only general principles are stable. One such principle is that proof of such a waiver must be established by preponderant testimony which affirmatively shows an agreement by the landlord, or conduct tantamount thereto, that the tenant might deal with the cotton as if free of any lien.
Justice McGehee (specially concurring) stated:
During the two preceding years, the tenant paid his rent in cash before the cotton crop was sold. Therefore, the landlord didn't have to consent for the tenant to sell the cotton; it had become no concern to him, and he would have had no right to interfere.
This Court, on numerous occasions, has recognized that a landlord's lien may be waived by a course of dealing between the landlord and tenant that shows consent by the landlord to the tenant's disposition and sale of the crop. In Stevenson-Whisenhunt Corp. v. Holeman, 341 So.2d 657 (Miss. 1977), the trial court held that the landlord was estopped from asserting its landlord's lien. In affirming the lower court, this Court held that where the landlord had expressly authorized the tenant to market and forward contract cotton and *1032 had acquiesced in the tenant's business dealings with the buyer, there was not only prior course of dealing relative to the forward contracting of the cotton but the landlord had made the tenant its agent for the purpose of contracting for the sale of its crop.
The distinction between the Stevenson-Whisenhunt situation and the one at hand is bold. In that case, the landlord expressly authorized the tenant to forward contract cotton for two previous years. (A forward contract is a contract to sell crops at a set price, usually executed six to eight months prior to harvest). The tenant contracted to sell all the cotton raised at 32 cents per pound. Between the execution of the contract in March, 1973, and the fall of 1973, the price of cotton in the open market rose to approximately 80 cents per pound. It was at that time that the landlord objected to the method in which the tenant was marketing the crop. Also, the landlord was paid with and had negotiated crop proceed's checks in the two previous years. He had direct knowledge of and had acquiesced in tenant's dealings with the buyer. In the current case, there was no express authorization by the landlord, the tenant paid with personal check, and Landlord testified that she did not know who purchased the crops.
In Federal Land Bank of New Orleans v. Southern Credit Corporation, 188 Miss. 192, 192 So. 827 (1940), a landlord sought to recover the amount of rent from a credit company which had advanced money to the tenant to produce the crop and which had received the proceeds from cotton sold by the tenant. In upholding the trial court's judgment for the credit company, this Court held that a landlord's lien on crops may be waived by a course of dealing between a landlord and tenant, if it shows consent by the landlord to the disposition and sale of the crops. By entrusting the tenant to sell the cotton, the landlord "accepted the risk incident to that permission."
In Land Bank, the lease required written consent by the landlord before the tenant could sell the crops. However, in the previous year, the landlord allowed the tenant to sell crops without written consent. Also, in that case, the landlord had executed a lien waiver in favor of the crop production lender. One may easily discern this case from Land Bank as the present lease did not require written consent for Mitchell to sell the crops nor did Landlord execute a lien waiver in favor of Bank. As such, Land Bank is inapplicable to the current situation.
In Judd v. Delta Grocery & Cotton Co., 133 Miss. 866, 98 So. 243 (1923), this Court held that where evidence established that the tenant leased the property from a landlord for an annual money rent, and the tenant, with the knowledge and consent of the landlord, each year sold the crops and then remitted the rent; the landlord, by this course of dealing had waived the landlord's lien. We said:
This course of dealing, this knowledge and permission of the landlord, constitute in effect an appointment of the tenant as his agent to dispose of the cotton on which the lien existed. If the tenant failed to carry out this trust and pay the rent, then the loss must fall on the landlord who clothed him with this authority, rather than on an innocent party.
133 Miss. at 883, 98 So. 243.
Unlike Judd, the current record reveals (and the chancellor determined) that, for the most part, Mitchell paid his rent before he received the crop sale proceeds. Further distinguishing this case from Judd is the fact that in Judd, the landlord had for "several years, including the year in controversy, permitted his tenant and son" to dispose of the crops and pay the rent out of the proceeds. There is testimony in the current record that Mitchell was not permitted to do this. See also, Phillips v. Thomas, 128 Miss. 729, 91 So. 420 (1922), (landlord testified that he trusted tenant to sell cotton for him.); Seavey v. Godbold, 99 Miss. 113, 54 So. 838 (1910), (landlord that accepted part of the proceeds from the buyer as payment for tenant's rent but failed to disclose to the purchaser that he also had claim for supplies was estopped from later asserting lien for supplies against the purchaser); 13 Harl, Agricultural *1033 Law, Farm Leases, § 121.05[2] (1989), (The lessor's consent to the removal of the crops from the premises does not waive the lien with respect to those crops).
In Phillips v. Box, supra, this Court held that there was no waiver where the landlord "never saw the cotton nor knew of its whereabouts nor when or whether it had been sold. He placed nothing in his tenant's hands but his confidence." 204 Miss. at 241, 37 So.2d at 268.
Phillips v. Box, 204 Miss. at 239-240, 37 So.2d 368 states:
Fryer had the receipts issued in his own name and excluded the landlord without the latter's knowledge and consent. Under the facts of this record, Fryer was not clothed by the landlord with indicia of ownership therefore no recognized principle of estoppel can be applied here. Tennessee Joint Stock Land Bank v. Bank of Greenwood, 179 Miss. 534, 535, 172 So. 323, 328 (1937).
The trial record reveals substantial evidence that Mitchell, with the full knowledge and consent of Landlord, was permitted to harvest, market and sell the crops as he saw fit. The question for this Court is whether this was conduct tantamount to an agreement "that the tenant might deal with the cotton as if free of any lien."

SCOPE OF REVIEW
The chancellor's findings of fact will not be reversed where it is supported by substantial evidence and is not manifestly wrong. The trial judge, sitting in a bench trial as the trier of fact, is the exclusive authority for determining witnesses' credibility. Gulf Park Water v. First Ocean Springs Dev., 530 So.2d at 1330.
This Court is charged to view the trial record in its entirety and accept:
... that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact.
Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983).
The chancellor concluded "I am convinced there was never a waiver of this lien. I'm impressed that rent was paid promptly, and in most cases, the rent was paid before the crops were sold in 1982, 1983, 1984, and the first payment due in 1985."
The lease contract ran for one crop year, from January 1 through December 31. It provided that half of the rent would be paid on February 10 with the remaining half due December 15. This seems to indicate that one half of each year's rent was actually paid before the crops were even planted, much less marketed and sold. Plaintiff's Exhibit 4 indicates that rental payments were made from Mitchell to Landlord on 3/3/83, 12/15/83, 1/19/84, 12/17/84 and 2/7/85. The record shows that the rent checks for 1982 were deposited by Landlord on May 3, 1982, and on December 9, 1982.
In 1982, Elevator purchased soybeans from Mitchell on 9/27, 10/10, 10/20, 10/28, 11/10, 11/12, 11/18, and 12/3. Elevator purchased the 1983 crop on 12/30/83 and 1/12/84. The 1984 bean crop was purchased on 11/28, 12/17/84 and 1/23/85. Although some of these crops were purchased before the second rental installment was due, all occurred after the first installment had been paid.
Landlord testified that she was not aware to whom the crops were sold. She stated she never gave a rent waiver and that as far as she was concerned the tenant already had the money.
Ben Sklar, Landlord's husband and agent, testified that they trusted Mitchell to harvest the crop and pay the rent. However, the record clearly shows that one half of the crop rental was paid each year before the crops were harvested.
This Court would be less than candid if it did not express some reservations about the chancellor's factual finding that there was no waiver. Some testimony was presented to the effect that Mitchell was free to harvest, market and sell the crops as he saw fit. However, it appears that the trial court was persuaded by the fact that, for the most part, rent was paid prior *1034 to the harvest and sale of crops. The lower court was equally impressed with Bank's actual notice of its debtor's landlord/tenant relationship. Given this Court's limited scope in reviewing a chancellor's findings of fact, this Court affirms the chancellor's factual determination that Landlord's conduct was not tantamount to an agreement "that tenant might deal with the cotton as if free of any lien" and adjudge this assignment as being without merit.

IV.

DID THE CHANCELLOR ERR IN HOLDING BANK LIABLE FOR THE UNPAID RENT?
Bank argues that the chancellor erred in his determination that the bank had "an equitable duty to see that the rent due to plaintiff was paid." It challenges the order that it make restitution to Elevator and Cotton Buyer. Elevator and Cotton Buyer take the position that because there was a constructive and resulting trust or agency relationship between themselves and the bank, Bank was obligated to use the funds to satisfy the landlord's lien. As these assignments address the same basic issue, they will be combined under the same heading for analysis.

CONSTRUCTIVE TRUST
In Sojourner v. Sojourner, 247 Miss. 342, 353, 153 So.2d 803, 807 (1963), this Court said:
A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.
A constructive trust "is raised by equity to satisfy the demands of justice." 76 Am Jur 2d, Trusts, § 21 at 446 (1975). Any transaction may provide an appropriate setting for creating a constructive trust where, for any reason, one party holds funds "which in equity and good conscience should be possessed by" another party. Their forms and varieties "are practically without limit." 89 C.J.S. Trusts, § 142 at 1027 (1955)
This Court stated in Allgood v. Allgood, 473 So.2d 416, 421 (Miss. 1985), and other cases cited therein.:
A constructive trust is a means recognized in our law whereunder one who unfairly holds a property interest may be compelled to convey that interest to another to whom it justly belongs.
Russell v. Douglas, 243 Miss. 497, 505-506, 138 So.2d 730, 734 (1962), presents a concise summarization of constructive trust law in this State:
A constructive trust is a fiction of equity. It is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. The equity must shape the relief and courts are bound by no unyielding formula. Bogert, Trusts and Trustees, 2d Ed., Sec. 471. It arises regardless of intention or agreement, express or implied. Rimmer v. Austin, 191 Miss. 664, 4 So.2d 224 (1941); Pitchford v. Howard, 208 Miss. 567, 45 So.2d 142 (1950). The trust is raised by implication of law. Fraud need not be shown. Adcock v. Merchants & Manufacturers Bank, 207 Miss. 448, 42 So.2d 427 (1949).
Clear and convincing proof is necessary to establish a constructive trust. Allgood v. Allgood, supra; Shumpert v. Tanner, 332 So.2d 411, 412 (Miss. 1976); among other cases cited therein.
Testimony at trial revealed:
(1) Bank was aware that Landlord leased the premises to Mitchell;
(2) Bank was told that the rent had not been paid;
(3) Bank furnished a lien list with its name on it to Elevator and Cotton Buyer *1035 and they relied on that list in making payments;
(4) Bank wanted any proceeds checks to be made out jointly to itself and Mitchell;
(5) Cotton Buyer was instructed by Bank to include bank's name on any crop proceed's check;
(6) Bank received the proceeds from the sale of the crops.
The chancellor determined, as a matter of fact, that Bank had full notice of the landlord's lien. In spite of this, Bank received all proceeds from the crop sale and Landlord, which by statute possessed a paramount lien upon those proceeds to secure its rental payment, received nothing. Equity requires that Bank, as the receiver of the proceeds which in good conscience belong to Landlord, be converted into a trustee.
Though we have not previously applied a constructive trust in a similar setting, the Iowa Supreme Court upheld the imposition of a constructive trust on a creditor in the case of Meyer v. Hawkeye Bank & Trust Company, 423 N.W.2d 186, 189 (Iowa 1988). In that case, a landlord filed suit against his tenant and the tenant's creditor to recover cash rent due on leased farmlands. The creditor argued that a landlord's lien does not attach to the proceeds of the crop sale but that the landlord must proceed against the tenant and the purchaser of the crops. The Iowa Supreme Court, in upholding an earlier case, Andrew v. Marshalltown State Bank, 208 Iowa 1184, 225 N.W. 957 (1929), stated:
... when a tenant sells property subject to a landlord's lien, a person who receives the proceeds of the property with knowledge of the lien may be compelled to account for the proceeds as a constructive trustee. The bank accepted corn proceeds with full knowledge that a landlord had a lien on the corn. The bank was thus a constructive trustee for the landlord.
423 N.W.2d at 189.
This same principle has application in the case at hand.
The previous discussion indicates that the chancellor's remedy was correct and that this assignment of error, like the others, is without merit.
As the statutory lien created in favor of landlords is a mandatory pronouncement of positive law, Landlord was not required to refer to the lien in her lease so as to retain it. A landlord's lien exists whether referred to or not. Bank's argument on this point was ridiculous and totally without merit.
Bank's blanket assertion that a landlord's lien does not apply to the proceeds of a crop sale is an incomplete statement of law. A review of the cases cited indicates that a true pronouncement of Mississippi law would be that a landlord's lien will not apply to the proceeds of a crop sale unless the party which received the proceeds has taken steps to subordinate the landlord's priority. As it appears that the latter pronouncement guided the chancellor in his decision, and that there is substantial evidence which supports his determination, this assignment is without merit.
Because the record fails to reflect that Landlord's conduct was tantamount to an agreement that Mitchell might deal with the cotton as if free from the lien, the chancellor was correct in determining that there was no waiver. As such, this assignment is without merit.
The situation at trial presented appropriate circumstances for the imposition of a constructive trust. Keeping in mind the great latitude which equity grants a chancellor in formulating this equitable remedy, his decree should be affirmed in its entirety.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, PITTMAN and BLASS, JJ., concur.