ADCOCK et al. *v.* MERCHANTS AND MANUFACTURERS BANK OF ELLISVILLE.

In Banc.    Oct. 24, 1949.

No. 37206  (42 So. (2d) 427)

Melvin & Melvin, and Collins & Collins, for appellants.

Deavours & Hilbun, and **W. U. Corley,** for appellee.

**Roberds, J.**

We are to determine on this appeal (1) whether appellant, Adcock, holds title as trustee for appellee Bank, or is himself the owner, of the eighty acres of land here involved, and (2) whether the proof is of such nature and weight as to justify the finding on that question by the Chancellor, and (3) whether appellant, Rutland, is an innocent purchaser of the land.

The conveyances attacked by the bill of the Bank in this cause, in the order of execution, are as follows:

November 19, 1932, a deed from the Bank to Adcock;

February 28, 1941, a deed from Adcock to Rutland;

March 1, 1941, an oil, gas and mineral lease from Rutland to Hill.

March 27, 1941, a timber deed from Rutland to Lowery.

The Bank's bill seeks to set aside these conveyances, as a cloud upon its title, to said eighty acres of land, or to compel a reconveyance thereof by Adcock to the Bank, free of the claims of the other parties, and for a personal decree against Lowery for the value of timber he had cut and removed from said land. The theory of the bill is that Adcock held title as trustee for the Bank

and that the other subsequent purchasers had notice, actual or constructive, of the trust relationship, and purchased subject thereto.

The Chancellor sustained the bill except as to Lowery. He found that Lowery was an innocent purchaser of the timber and dismissed the bill as to him. Hill did not appeal and the Bank took no cross appeal from the decree against it in favor of Lowery. Only Adcock and Rutland appeal. Therefore, we decide only the rights of the Bank as against Adcock and Rutland.

First, as to Adcock: On November 19, 1932, the Bank executed to him a deed to the land. The Chancellor found that Adcock held the land as trustee for the Bank and not in his own right. That finding rested largely upon oral and circumstantial evidence. This requires that we determine the competency and sufficiency of the evidence to justify that finding. The conveyance to Adcock appears to have been a special warranty deed, without limitation or qualification as to title, reciting a consideration of $400.00, although the record does not contain this deed or any other conveyance which is attacked.

The proof justified the finding of the following facts:

On and before November 19, 1932, the date of the deed from the Bank to Adcock, and for a number of years prior and subsequent thereto, a total of some nine years altogether, Adcock was an employee of the Bank on a monthly salary. The Bank, during that period, acquired in the conduct of its business and owned a number of tracts of land. It was the duty of Adcock, under his employment by the Bank, to manage, control and look after these lands; rent them out, collect and pay to the Bank rents thereon; see to the proper sale of crops; find purchasers for the lands, reporting to and consulting with the Bank, from time to time, about these matters.

In the discharge of these duties it was found convenient and expedient to place in the name of Adcock unre-

stricted title to some of the lands. It was thought a better price might be had, and, too, under the conditions then existing, the Bank had not been able to sell and dispossess itself of title to some of the lands within the time required by law, apparently this arrangement being known to and not disapproved by the State Banking Department. A number of tracts had been so handled prior to the execution of the deed in question, and, so far as this record shows, Adcock had not made claim to any personal ownership of lands so held by him, or declined to execute proper deeds thereto for the benefit of the Bank, or make proper accounting to the Bank of the proceeds of land sales, although there is evidence that, near the end of his employment, there was dereliction of duty in reporting rent collections. Pursuant to this custom and arrangement the deed in question was executed, nothing being paid therefor by Adcock. It appears this deed was prepared and executed and placed of record by the Bank without the knowledge of Adcock. The Bank retained possession of the deed. It appears Adcock never knew of its existence, or record, until a short time (the exact time not being shown) before the bill herein was filed. He never saw the deed itself until it was produced by the Bank at the trial of this cause.

In 1933 Adcock had some kind of an arrangement with one Murphy either for rental or purchase of the land, the exact nature and terms of which not being shown. In fact, Adcock testified he did not remember whether the agreement was written or oral. Apparently it was oral. In any event, Murphy moved onto the land. The record discloses, we think, that Murphy understood the land belonged to the Bank and that Adcock was acting for the Bank. Murphy, after remaining upon the land a short time, decided he did not care to go through with the arrangement, whatever it was. He told his friend Bradley of that decision. Bradley thought he might wish to buy the land. The two went to Adcock, who

gave them to understand the land belonged to the Bank and it would have to execute the deed to Bradley; whereupon Bradley and Murphy discussed with the Bank Bradley's proposed purchase. Price and terms were agreed upon. Bradley understood the Bank would execute the deed and send it to him later by Adcock. He and Mrs. Bradley executed notes payable to the Bank for the purchase price and a trust deed on the land to secure the notes. These were delivered to the Bank. The Bank understood that Adcock would execute the deed to Bradley. In any event, Bradley became dissatisfied with his purchase and moved away from the property after about a year. The Bradley matters took place in 1934. The Bank retained possession of the notes and trust deed but did not foreclose because it learned that Adcock had not executed the deed to Bradley.

It crops out also that some rental, or prospective purchase, arrangement was made with one Jordan. This appears to have been oral, the terms of which are not disclosed.

The record is silent as to further handling of the land until February 12, 1941, on which date the Bank executed to one Dunbar an oil, gas and mineral lease thereon, which was assigned by Dunbar to an oil company, neither of which is a party to this litigation.

In the meantime, between 1934 and 1941, considerable interest in oil possibilities had developed in the neighborhood of this land. Also, as we construe the testimony of Adcock, it was sometime before 1941, after such oil interest development, he learned the deed had been executed to him, and he conceived the idea he was the owner of the property.

On February 28, 1941, Adcock conveyed the land to Rutland, his son-in-law. It might be added that apparently the first information the Bank had that Adcock was claiming to be the owner of the land was shortly before, or about the time of, the purchase by Rutland.

Upon learning of these negotiations the Bank, according to the finding of the Chancellor, and the president of the Bank so testified, informed Rutland it owned the land and that Adcock had title as trustee for the Bank, and if he purchased the land he would purchase a lawsuit. Also the Bank wrote Adcock at least three letters requesting that he reconvey the property to the Bank. Adcock did not outright refuse to execute such conveyance; he simply delayed the matter, saying he wanted to wait a short time.

It might be added, on the point under consideration, that during the years 1932 to, and including, 1935, the land was assessed to and the taxes paid thereon by the Bank; for the years 1936 and 1937 it was assessed to Jordan, who failed to pay the taxes, resulting in a sale thereof, and was redeemed by the Bank; for 1938 it was assessed to and paid by the Bank; in 1939 it was assessed to the Bank, sold to W. H. Ellsworth and redeemed by Adcock; in 1941 it was assessed to the Bank and paid by Adcock.

It is thus seen that Adcock was an employee of the Bank; that title was vested in him by virtue of this fiduciary relationship; that he paid nothing for it; for a number of years did not know he had title; had never had the deed in his possession; that for several years he dealt with the property as that of the Bank; that he was performing as to the land the duties for which he was employed; that taxes on the land were assessed to and paid by the Bank. That is enough to establish title in Adcock as a constructive trustee for the Bank. "A constructive trust arises where a conveyance is induced on the agreement of a fiduciary or confidant to hold in trust for a reconveyance or other purpose, where the fiduciary or confidential relation is one upon which the grantor justifiably can and does rely and where the agreement is breached, since a breach of agreement is an abuse of the confidence, and it is not

necessary to establish such a trust to show fraud or intent to perform the agreement when it was made. The tendency of the courts is to construe the term "confidence" or 'confidential relationship' liberally in favor of the confider and against the confidant, for the purpose of raising a constructive trust on a violation or betrayal thereof." 54 Am. Jur. p. 178, Sec. 233. It is in evidence here that this general arrangement was suggested by Adcock. ██ ██ "Active conduct on the part of the grantee to bring about the conveyance, especially where there is a fiduciary or confidential relationship between him and the grantor, and the grantee's subsequent failure to carry out his agreement or promise to hold in trust for reconveyance, tend to show fraud or bad faith on the part of the grantee, so as to raise a constructive trust." 54 Am. Jur. p. 179, Sec. 234.

But it is contended by appellants that parol testimony to the effect Adcock agreed to hold the property in trust for the Bank was incompetent, because it contradicted the terms and effect of the special warranty deed to Adcock. Conceding, but not deciding, the point, still ██ ██ all of the other parol testimony, and all the acts and statements of the parties relative to this situation shown thereby, together with all documents and records, and the circumstances surrounding the parties, were competent, and this was ample to establish a constructive trust, eliminating parol evidence of an express oral agreement to so hold title to the property. Trusts are often deduced from circumstances. Old Ladies' Home Ass'n v. Grubb's Estate, 191 Miss. 250, 199 So. 287, 2 So. (2d) 593. The intention of the parties may be inferred from the facts, the conduct of the parties and the surrounding circumstances. Sample v. Romine, 193 Miss. 706, 8 So. (2d) 257, 9 So. (2d) 643, 10 So. (2d) 346; Triplett v. Bridgeforth, 205 Miss. 328, 38 So. (2d) 756. ██ ██ "Where the owner of land transfers it inter vivos to another in trust for the transferor, but no memorandum

properly evidencing the intention to create a trust is signed, the transferee will be compelled to hold the land upon a constructive trust for the transferor, if the transferee at the time of the transfer was in a confidential relation to the transferor. This is true even though at the time of the transfer the transferee intended to perform the oral trust, and even though he was not guilty of undue influence or other abuse of his confidential relation to the transferor in procuring the transfer." A. L. I. Restatement, Trusts, Sec. 4 (1) (b). ██ Oral evidence was competent to prove lack of consideration. Raleigh State Bank v. Williams, 150 Miss. 766, 117 So. 365. Nor does it follow that because Adcock orally agreed to hold the property in trust, which might contradict the effect of a special warranty deed, the court cannot establish a constructive trust from the other evidence in the case. ██ "It is well settled by authority that where, on the facts proved, a trust would result in the absence of an express agreement, the fact that such an agreement was made will not prevent the trust from arising." Thomas v. Thomas, 62 Miss. 531; Sample v. Romine, supra.

It is urged by appellants that Section 269, Code 1942, precludes any relief to the Bank herein. ██ That Section provides that all trusts in land must be in writing and duly recorded, or they are void. That applies, and is confined to, express trusts. The statute expressly states " . . . but where any trust shall arise or result, by implication of law, out of a conveyance of land, such trust or confidence shall be of the like force and effect the same as it would have been if this statute had not been passed." Therefore, since the facts and circumstances here have created a constructive trust in Adcock, the statute has no application to this situation.

As to Rutland: The Chancellor held he was not an innocent purchaser because, first, the records and other facts within the knowledge of Rutland charged him with

constructive notice of the trusteeship of Adcock, and because, second, ▮▮ he had actual knowledge thereof. We do not pass upon the correctness of the first holding for the reason there is ample testimony to support the second.

As stated, Hill did not appeal, but we might say it is undisputed he was a partner with Rutland and chargeable with the knowledge of his partner.

The Chancellor found for Lowery and the Bank does not cross-appeal, therefore, no issue between him and the Bank is before us.

Affirmed.