RUSSELL, et al. *v.* DOUGLAS

No. 42229 March 19, 1962 138 So. 2d 730

498

*Noble & Noble,* Brookhaven, for appellants.

*Allen & Patterson,* Brookhaven, for appellee.

GILLESPIE, J.

This is a suit in equity by Leroy Russell and his wife, Mary Frances, against the maternal aunt of Leroy Russell, Mrs. Gladys Douglas, seeking a decree declaring certain land acquired by the defendant to be held by the defendant in trust for the complainants. When appellant is used hereinafter, it refers to Leroy Russell and Mrs. Douglas is referred to as appellee.

The facts are stated as we find them to be established by clear and satisfactory proof, either without dispute or manifestly appearing from all the proof.

In 1957, appellant's mother conveyed to him a residential lot in the City of Brookhaven, reserving unto herself a life estate. During that year appellant caused Deeb Construction Company to build on said lot a shell home at a cost of about $2,000. Appellant paid $10 down and executed notes for about $2,000, payable monthly. In addition to the new home there were two rental shacks on the lot. Appellant's mother, Mrs. Quinn, the owner of the life estate, did not sign the deed of trust to Deeb. Appellant defaulted in his payments to Deeb and the deed of trust was foreclosed in April 1958. At that time appellant and his wife were making their home on the property and because of the life estate held by Mrs. Quinn, Deeb could not get possession of the property. Appellant and his wife continued to live thereon and never parted with possession.

Appellant's mother became ill about September 1959, and appellee and her husband came from their home in Texas and spent considerable time in Mississippi. Appellant's mother, Mrs. Quinn, and appellee were sisters and very close, and appellee was very attentive to Mrs. Quinn until Mrs. Quinn died January 3, 1960. The death of Mrs. Quinn terminated her life estate. Deeb had theretofore sued appellant for a deficiency judgment based on the note given for the construction of the residence. After Mrs. Quinn died, Deeb did not intend to take judgment in the deficiency suit, and did not take judgment. Sometime in the spring of 1960, Deeb instituted eviction proceedings against appellant in order to get possession of the property.

Notwithstanding the deed of trust had long since been foreclosed, appellant made payments from time to time to Deeb and in February 1960, he paid Deeb $800 which he had received from the proceeds of a life insurance policy on his mother. This $800 was applied to appellant's indebtedness to Deeb.

Appellant's mother, Mrs. Quinn, left a purported will, under the terms of which appellee would receive 20 acres of land which is not involved in this suit. Appellant and appellee jointly employed Attorney Cohn in connection with the estate of appellant's mother and appellant sought to have the will giving appellee 20 acres of land upheld. The portion of Mrs. Quinn's estate which appellant would otherwise receive would be cut down if appellee received said 20 acres of land. The record indicates that said will was not valid and was not admitted to probate. Appellant and appellee had a joint lockbox in the bank wherein were kept certain papers apparently relating to the estate of appellant's mother.

After Deeb instituted eviction proceedings against appellant for the possession of the property in question, he went to see Attorney Cohn, who was the attorney

for both appellant and appellee and had been jointly representing them in the estate matter. Appellant requested Attorney Cohn to work out a settlement with Deeb in order to get his property back. Sometime theretofore, appellant had some conversation with appellee in which he was led to believe that appellee would advance the money in order for appellant to redeem his property from Deeb. Appellant so told Attorney Cohn and said attorney wrote Deeb at Jackson, Mississippi, that appellant would get the money to redeem his home from his people in Texas. Attorney Cohn then had considerable negotiations by telephone and letter with Deeb and its attorney, and they agreed that upon payment of $1465.87, the amount owing by appellant plus expenses, Deeb would execute a quitclaim deed to appellant. Attorney Cohn contacted appellee and her husband who were then in Texas, and appellee or her husband told Attorney Cohn to have Deeb execute the deed in the name of appellee and to secure a quitclaim deed from appellant to appellee. An engagement was made for appellee and her husband to come to Mississippi, which they did, and had Attorney Cohn prepare the quitclaim deed for the signature of appellant and his wife, quitclaiming the property to appellee. Attorney Cohn had not had any further contact with appellant. When this quitclaim deed was prepared, appellee's husband called appellant and told him to come to Attorney Cohn's office. This was done and appellant and his wife executed a quitclaim deed to appellee. Appellant knew that he was executing a quitclaim deed to appellee but no one explained the transaction to him. This quitclaim deed was executed on June 21, 1960, and Attorney Cohn on that same day telephoned Deeb to make their quitclaim deed to appellee. At the time appellant and his wife executed the quitclaim deed in Attorney Cohn's office, appellee and her husband were present and nothing was said about appellant moving from the property.

In fact, no agreement was had between them and no agreement was ever had by anyone with appellant.

Appellant was told by appellee when the quitclaim deed was signed that appellee would see appellant before she went back to Texas. Appellant understood this to mean that arrangements would be made at a later time with reference to repaying appellee for the amount paid out by her. On June 23, 1960, the quitclaim deed from Deeb Construction Company to appellee arrived at the Brookhaven Bank and appellee's husband paid the draft for $1465.87, placed the deed of record, paid some back taxes, paid Attorney Cohn a fee, and insured the house. He then went to the property in question and appellant was not at home. Appellee's husband told the two tenants of the rental shacks to move out. The next day appellee and her husband tried but failed to see appellant and then they left for Texas. As soon as appellee got to Texas, she wrote appellant to vacate the premises on a certain date. Before appellant received this letter, he telephoned appellee remonstrating with her for telling his tenants to move. Appellant has never recognized appellee as the owner of the property and offered to return her money with interest, and thereafter filed this suit.

Appellant is a young man who finished the eleventh grade in school, and has had no experience whatever in property transactions. Appellee's husband, who acted for her in this transaction, is a college graduate, and has retired. A qualified real estate appraiser valued the property in dispute at $4775. Appellee's husband admitted it had a conservative value of $2500 to $3000. The court is satisfied that the property is worth about three times what appellee paid out in acquiring title.

There were two substantial disputes in the testimony. One was whether appellee told appellant that she would lend him money to redeem his property. The other was whether Attorney Cohn telephoned appellee's husband

about a week before the transaction was closed that appellant had lost his property and it could be bought at a bargain; Cohn denied this was true.

The chancellor rendered a lengthy opinion, and we think that he dismissed the bill not because he did not believe appellant was told by appellee that she would advance the money to redeem the home, but because there was no specific agreement as to the amount to be loaned, the interest to be charged, how it was to be repaid, and the kind of security to be taken. The chancellor found as a fact that although the deed of trust had been foreclosed appellant had not lost his property and at the time of the transaction here involved on June 21 and 23, 1960, appellant had the right to redeem the property for the stated sum. The attorney for Deeb testified that an agreement was made to this effect and there is no dispute in the record on this question.

Appellant received nothing for executing the quitclaim deed.

 █ We hold that the chancellor erred as a matter of law in finding that a specific agreement in detail was necessary before he could find for appellant, and in failing to take into consideration all of the circumstances involved, including the relationship between appellant and appellee. █ We hold there was a confidential relation existing between appellant and appellee, although not necessarily the kind of fiduciary relationship involved in Ham v. Ham, 146 Miss. 161, 110 So. 583, and cases of that kind.

Appellee in her testimony endeavored to testify that she and appellant were not so close but the undisputed facts establish a confidential relation. Appellee was extremely close to appellant's mother, Mrs. Quinn, and had spent considerable time in Mississippi in connection with Mrs. Quinn's terminal illness. After Mrs. Quinn's death, appellee and appellant had a joint lockbox. Ap-

pellant obviously felt very close to his aunt, the appellee, because he endeavored to have a will giving appellee 20 acres of land probated although this would result in appellant's portion of his mother's estate being diminished. Appellant and appellee had the same attorney, and it is clearly shown that the attorney considered the relationship between appellant and appellee such that he did not find it necessary to inquire into what agreement they had in connection with the redemption of the property from Deeb. Attorney Cohn had done all that was done to work out the settlement with Deeb in behalf of appellant, and he understood that appellee would provide the money. When appellee's husband asked that the deeds be made to appellee instead of appellant, the attorney regarded the relationship as such that he did not think he needed to inquire as to what arrangements they had between them or that it was necessary to explain the effect of the transaction to appellant. We are also confident that appellant, under all the facts and circumstances of this case, believed and had reason to believe, that his aunt, the appellee, was putting up the money for his benefit. The record manifestly shows that he never understood, or had any reason to understand, that he was losing his property. We hold, therefore, that there was a confidential relation between appellant and appellee and that appellant relied on this relationship in allowing the title to this property to be placed in his aunt's name. ▉▉ Courts construe the term ''confidential relationship'' liberally in favor of the confider and against the confidant for the purposes of raising a constructive trust. Adcock v. Merchants & Manufacturers Bank, 207 Miss. 448, 42 So. 2d 427.

▉▉ A constructive trust is a fiction of equity. It is the formula through which the conscience of equity finds expression. ▉▉ When property has been acquired in such circumstances that the holder of the legal

title may not in good conscience retain the beneficial interest, equity converts him into a trustee. ██ █ The equity must shape the relief, and courts are bound by no unyielding formula. Bogert, Trusts and Trustees, Sec. Ed., Sec. 471. ██ █ It arises regardless of intention or agreement, express or implied. Rimmer v. Austin, 191 Miss. 664, 4 So. 2d 224; Pitchford v. Howard, 208 Miss. 567, 45 So. 2d 142. ██ █ The trust is raised by implication of law. ██ █ Fraud need not be shown. Adcock v. Merchants & Manufacturers Bank, 207 Miss. 448, 42 So. 2d 427.

██ █ The existence of the confidential relationship between appellant and appellee under the circumstances prohibited appellee from becoming unjustly enriched at appellant's expense. Bogert, Trusts and Trustees, 2d ed., Sec. 496. In Sinclair v. Purdy, 235 N. Y. 245, 139 N. E. 255, Judge Cardoza said: "It is . . . . unjust enrichment under cover of the relation of confidence, which puts the court in motion." See also Farano v. Stephanelli, 183 N. Y. S. 2d 707.

██ █ The case is reversed and judgment entered here declaring appellee a trustee. Upon remand, a decree should be entered adjudicating the amount appellee has paid out in preserving and maintaining the property. The decree should allow appellant a reasonable time to repay appellee said sum, plus lawful interest, and upon such payment appellee should be ordered to convey the property to appellant by quitclaim deed. ██ █ If said sum is not paid within the specified time, the property should be sold and the proceeds distributed in accordance with the interests of the parties.

Reversed and remanded.

*Kyle, Ethridge, McElroy* and *Jones, JJ.,* concur.