LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Michael James Tillman filed an action in the Forrest County Chancery Court against his half-brother, David D. Mitchell, for establishment of a constructive trust of a piece of property in Hatties-burg, Mississippi. Mitchell owned the property, and Tillman rented the house on the property from Mitchell. Mitchell filed a counter-claim for back rent on the property for May 1, 2009, through June 1, 2010. The chancellor found that no constructive trust existed. The chancellor also agreed with Mitchell on his counter-claim for past-due rent and awarded Mitchell $4,200, which represented fourteen months of rent at $300 a month.
¶ 2. Tillman now appeals, asserting the following issues: (1) the chancellor erred in not finding that a constructive trust existed between Tillman and Mitchell; (2) the proof showed by clear-and-convincing evidence that a constructive trust existed; and (3) Tillman was entitled to a refund of the amount paid to Mitchell under the presumption that there was an agreement for purchase of the property. Issues one and two will be discussed together as they address the same argument. Finding no error, we affirm.
FACTS
¶ 3. Tillman and his wife rented a house in Hattiesburg, Mississippi, from Nancy Cole for $400 a month. In 2003, after Cole’s husband passed away, she decided to sell the house. The Tillmans did not want to move, but they could not afford the $5,000 asking price. Cole testified that she offered the Tillmans the house at a low price because they had been paying rent since 1996.
¶ 4. Tillman asked his sister for help in purchasing the house. She declined. Tillman then asked Mitchell for help. Mitchell declined initially, but in June 2006, Mitchell purchased the house along with an adjacent piece of vacant property. At the time of the purchase, the Tillmans were behind one month’s rent. Mitchell paid the $400 past-due rent along with the purchase price. Cole executed a warranty deed to Mitchell. Cole testified that it was her understanding that Mitchell would transfer the deed to Tillman after Tillman paid Mitchell for the property, but she had no knowledge of whether or not Mitchell and Tillman had made an agreement to this effect.
¶ 5. The Tillmans continued to live in the house, and they paid Mitchell $200 a month in rent. In August or September 2006, Mitchell gave Tillman the option of purchasing the property by paying either $250 a month for sixty months or $300 a month for forty-eight months. Tillman began paying Mitchell $300 a month in September, although at trial Tillman denied knowledge of any agreement. According to Mitchell, Tillman agreed verbally to pay property taxes, keep the property clean, and purchase insurance for the house. Tillman argues there was no such agreement.
¶ 6. The terms of the alleged lease-purchase agreement were first placed into writing in a letter dated May 12, 2007. The letter stated that Tillman had paid $2,400 toward the purchase of the house, but Tillman still owed Mitchell $12,000 per *558 their agreement. Attached to the letter were the “terms and conditions” of the lease purchase as set out by Mitchell. Among other terms, the document states that payments would be made at $300 a month for forty-eight months; the property must be kept clean and free of debris; “payments made 30 late [sic] cancils [sic] entire agreement”; and taxes and insurance must be paid by the purchaser. Mitchell alleges that Tillman had repeatedly failed to pay property taxes and insurance and keep the property clean.
¶ 7. In a letter dated July 15, 2009, Mitchell ordered Tillman to vacate the property by July 23, 2009. Mitchell alleged that Tillman was seven months behind on rent and had failed to pay the property taxes. Tillman filed suit in the Forrest County Chancery Court to quiet title. The chancellor dismissed the complaint, and the current action was commenced by Tillman to establish a constructive trust.
STANDARD OF REVIEW
¶ 8. The findings of a chancellor will not be disturbed on review unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard. Bank of Mississippi v. Hollingsworth, 609 So.2d 422, 424 (Miss.1992). The standard of review employed by this Court for review of a chancellor’s decision is abuse of discretion. Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc., 716 So.2d 200, 204 (¶ 15) (Miss.1998). However, for questions of law, the standard of review is de novo. Consolidated Pipe & Supply Co. v. Colter, 735 So.2d 958, 961 (¶ 13) (Miss.1999). The applicability of a constructive trust is a “pure question” of law; thus, our standard of review is de novo. Davidson v. Davidson, 667 So.2d 616, 620 (Miss.1995).
DISCUSSION
I. CONSTRUCTIVE TRUST
II. CLEAR-AND-CONVINCING EVIDENCE
¶ 9. Tillman argues that he and Mitchell made an agreement whereby Mitchell would purchase the house from Cole for $5,400, and Tillman would repay Mitchell $5,400 in monthly installments in exchange for ownership of the house. However, the payments under the lease-purchase agreement written by Mitchell totaled $14,400. Mitchell testified that it was never his intention to hold the property in trust for Tillman until Tillman had repaid him the purchase price. Tillman argues that he has compensated Mitchell for the property through the rent payments made thus far, and Mitchell should be required to convey the property to him under the equitable doctrine of constructive trust.
¶ 10. A constructive trust arises in order to prevent unjust enrichment by a person gaining property that rightfully belongs to someone else. McNeil v. Hester, 753 So.2d 1057, 1064 (¶24) (Miss.2000). The supreme court has defined a constructive trust as follows:
A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.
Planters Bank & Trust Co. v. Sklar, 555 So.2d 1024, 1034 (Miss.1990) (quoting Sojourner v. Sojourner, 247 Miss. 342, 353, *559 153 So.2d 803, 807 (1963)). A chancellor may “construct a trust for the benefit of the party whose confidence has been abused.” Davidson, 667 So.2d at 620. The existence of a constructive trust must be proven by clear-and-convincing evidence. McNeil, 753 So.2d at 1064 (¶ 25).
¶ 11. Tillman asserts that he and Mitchell were raised as brothers, and he relied on their relationship when asking Mitchell to purchase the house for him. For a “confidential relationship to exist between two persons, there must be a relation in which one person is in a position to exercise a dominant influence upon the other.” In re Estate of Parker, 13 So.3d 877, 880 (¶ 8) (Miss.Ct.App.2009) (quoting Tatum v. Barrentine, 797 So.2d 223, 230 (¶ 32) (Miss.2001)). Tillman testified that he did not finish high school, and he lacked understanding of business transactions. Mitchell, on the other hand, was a college graduate with business experience. Tillman’s friend, Ronald Johnson, testified that he had helped Tillman read and understand the details about the house and lawsuit. Johnson testified that he took Tillman to the Mississippi Center for Legal Services for help. He testified that he reads any correspondence from Mitchell or the legal services office to Tillman. Tillman’s wife testified that she did not know the terms of the agreement, but she felt that Mitchell treated Tillman unfairly. She stated that Mitchell was “just trying to beat us.”
¶ 12. Tillman argues that his case is similar to that of Russell v. Douglas, 243 Miss. 497, 138 So.2d 730 (1962). In Russell, Leroy Russell’s mother conveyed a piece of property in Brookhaven, Mississippi, to Russell, but she retained a life estate for herself. Id. at 500, 138 So.2d 730. While his mother was still living, Russell hired Deeb Construction to build a shell home on the property for $2,000. Id.
Russell defaulted on his payments to Deeb. Id. Deeb attempted to obtain possession of the property but could not because Russell’s mother held a life estate. Id. Two years later, Russell’s mother passed away. Id. at 501, 138 So.2d 730. Deeb instituted eviction proceedings. Id. Russell sought financial help from his aunt, Gladys Douglas, to redeem the property, and Douglas agreed. Id. at 502, 138 So.2d 730. Russell and Douglas shared the same attorney. Id. The attorney was contacted by Douglas or her husband and instructed to have the deed made in Douglas’s name. Id. Douglas and Russell met, and Russell executed a quitclaim deed to Douglas. Id. Russell was not asked to vacate the property nor was the transaction explained to him. Id. Douglas then sent Russell a letter demanding that he vacate the property. Id. at 503, 138 So.2d 730. Russell sued, arguing that he held a constructive trust. Id. The Mississippi Supreme Court agreed. Id. at 505, 138 So.2d 730. In finding a constructive trust, the supreme court noted that Russell and Douglas shared a confidential relationship. As evidence of a confidential relationship, the supreme court noted that Russell and Douglas used the same attorney and held a joint lockbox after Russell’s mother’s death. Id. at 504-05, 138 So.2d 730. The supreme court also noted that Russell had no understanding that he was going to lose his property and that Russell received nothing in exchange for executing the quitclaim deed. Id.
¶ 13. We find Tillman’s case distinguishable from Russell. Unlike Russell, who was deeded the property by his mother, Tillman had no ownership interest in the property Mitchell purchased from Cole. The evidence regarding Mitchell’s and Tillman’s intentions was conflicting at best. No evidence was presented that Mitchell planned to deed the house to Tillman at the time Mitchell purchased the *560 house from Cole. Mitchell did not instigate the purchase of the property but only did so at Tillman’s request. No evidence was presented that Mitchell purchased the property at a price below fair-market value, except for Cole’s testimony that she would not have sold the house to anyone else for $5,000. There was no evidence of a confidential relationship between Tillman and Mitchell other than Tillman’s testimony that the two were raised as brothers. Tillman himself testified that his sister was an attorney, and Mitchell was not the person anyone in the family usually sought out for business advice. Tillman asserts that the requirement in the lease-purchase agreement that he pay the property taxes was evidence of ownership. However, Tillman only paid taxes one year, and Tillman was not ordered by the chancellor to pay the past-due property taxes.
¶ 14. Tillman has presented no legal duty on the part of Mitchell to deed him the house or hold it in trust for him. The chancellor could not find by clear-and-convincing evidence that the arrangement between Tillman and Mitchell resulted in a constructive trust. We agree. Thus, we find that this issue is without merit.
III. REFUND
¶ 15. Next, Tillman argues that if a constructive trust was not established, he is entitled to a refund of the rent payments he made to Mitchell under the theory of unjust enrichment.
¶ 16. Unjust enrichment has been described by this Court as follows:
An unjust enrichment action is based on a promise, which is implied in law, that one will pay a person what he is entitled to according to “equity and good conscience.” Thus, the action is based on the equitable principle “that a person shall not be allowed to enrich himself unjustly at the expense of another.” It is an obligation created by law in the absence of any agreement; therefore, it is an implied in law contract.
1704 21st Ave., Ltd. v. City of Gulfport, 988 So.2d 412, 416 (1110) (Miss.Ct.App.2008) (quoting Magnolia Fed. Savings & Loan v. Randal Craft Realty, 342 So.2d 1308, 1311 (Miss.1977)).
¶ 17. We cannot find that Mitchell was unjustly enriched by the payments he received from Tillman. Tillman and his wife resided in the house owned by Mitchell at the time of trial, even though they had not paid rent since April 2009. The Tillmans did not put on proof that they improved the property or made any other financial investments in the property. Tillman paid the property taxes for one year, but in light of other factors, we cannot find this sufficient to amount to unjust enrichment. We find the opposite of Tillman’s argument to be true — Tillman would be unjustly enriched if he were allowed to live rent free for the duration of the time Mitchell owned the house.
¶ 18. We find that Tillman is not entitled to a refund of the rent payments he made to Mitchell. This issue is without merit.
¶ 19. THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.