# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00739-COA

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF HOUSTON T. JARVIS, SR.: SHELBY J. KILPATRICK, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF HOUSTON T. JARVIS, SR. | APPELLANT/CROSS-APPELLEE |

v.

| | |
|---|---|
| HOUSTON T. JARVIS, JR. AND WILLIAM C. JARVIS | APPELLEES/CROSS-APPELLANTS |

| | |
|---|---|
| DATE OF JUDGMENT: | 04/09/2015 |
| TRIAL JUDGE: | HON. JOSEPH KILGORE |
| COURT FROM WHICH APPEALED: | KEMPER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | GEORGE H. SPINKS |
| ATTORNEY FOR APPELLEES: | MARK A. SCARBOROUGH |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| TRIAL COURT DISPOSITION: | IMPOSED A CONSTRUCTIVE TRUST AND FOUND THOSE FUNDS IN DECEDENT'S CHECKING ACCOUNT AND CERTIFICATE-OF-DEPOSIT ACCOUNT WERE ASSETS OF THE ESTATE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART: 06/27/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., FAIR AND WILSON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1. In this case, we consider the appeal and cross-appeal of the chancellor's decision to impose a constructive trust. Because we find that the constructive trust was properly imposed but should have included additional proceeds, we affirm the chancellor's judgment in part and reverse and render in part.

## FACTS AND PROCEDURAL HISTORY

¶2. Houston T. Jarvis Sr. ("Jarvis") died on October 16, 2011. His wife predeceased him. Jarvis was survived by his three children, Shelby J. Kilpatrick, Houston T. Jarvis Jr. ("Houston"), and William C. Jarvis ("William").

¶3. On February 28, 1989, Jarvis executed a general power of attorney and named Kilpatrick as his attorney-in-fact. Then, on February 2, 2001, Jarvis executed a Last Will and Testament. In this will, Jarvis left his estate to his three children in equal shares. Jarvis never revoked or amended his will.

¶4. Jarvis had a checking account at The Commercial Bank ("Commercial Bank"). He originally opened this account with his late wife in January 1989. The checking account was designated a joint account with rights of survivorship. On December 2, 2004, Kilpatrick's name was added to the checking account. Jarvis, however, did not execute a new signature card. Instead, the original signature card was amended. The name of Jarvis's late wife was stamped with the word "DELETE," and Kilpatrick signed the original signature card under the stamped notation. The survivorship provision on the signature card remained.

¶5. Vicky Sanderson, an employee of Commercial Bank, testified that, at the time of the transaction, a new signature card was not required. Instead, it was Commercial Bank's custom and procedure to delete and add a name without the creation of a new card. When asked whether Jarvis's presence was required for the transaction, Sanderson testified as follows:

> [Jarvis] would have—he would have had to have come in and brought [Kilpatrick] in, I would have—I would think. Now, I don't know—I mean,

> normally, that's what we did. I mean, we don't put someone on unless the owner of the account does come in to actually do that.

However, Sanderson did not recall the specific transaction. She was not able to testify that she personally witnessed or could confirm Jarvis's presence on the day the signature card was changed.

¶6. Following the change of signature card, the monthly bank statements continued to be sent to Jarvis. However, the statements were issued in Jarvis's name only. The statements never reflected any evidence of the change in title of the ownership of the bank account and never indicated a joint tenancy with Kilpatrick.

¶7. In June 2005, Jarvis moved in Kilpatrick's residence. Jarvis remained at Kilpatrick's home until his death.

¶8. On April 21, 2008, Kilpatrick opened a liquid certificate-of-deposit account at Commercial Bank, with Jarvis as "Signer #1" and Kilpatrick as "Signer #2." It is undisputed that Jarvis did not sign the signature card creating the account and was not present when the account was created. Instead, Kilpatrick created the account and signed on behalf of Jarvis as his attorney-in-fact.

¶9. Beginning in 2008, Kilpatrick, acting as Jarvis's attorney-in-fact, closed and endorsed various certificates of deposit owned by Jarvis at The Citizens Bank ("Citizens Bank"). Some of the certificates of deposit were designated for Houston and William. Kilpatrick transferred the funds to Jarvis's checking account and the liquid certificate-of-deposit account at Commercial Bank.

¶10. On September 27, 2011, less than one month before Jarvis's death, Kilpatrick

3

withdrew $5,000 from Jarvis's checking account and the liquid certificate-of-deposit account. As of the date of Jarvis's death, the balance of the checking account was $33,981.10. And as of December 31, 2011, the balance of the liquid certificate-of-deposit account was $122,405.46.

¶11. After Jarvis's death, Kilpatrick, Houston, and William met at Kilpatrick's residence. Kilpatrick advised Houston and William that there was no money in Jarvis's estate. Kilpatrick told them that Jarvis had left her a certificate of deposit worth approximately $100,000.

¶12. On December 7, 2011, Kilpatrick filed a "complaint for probate of will[,] appointment of executor" in the Chancery Court of Kemper County, Cause No. 2011-0184. The chancery court entered an order to probate the will and appointed Kilpatrick as executor.

¶13. On April 9, 2013, Houston and William filed a "complaint for accounting and other equitable relief" in the Chancery Court of Kemper County, Cause No. 2013-0020. In this complaint, Houston and William claimed Kilpatrick had abused the confidence that was placed in her by Jarvis, and, as a result, sought the imposition of a constructive trust. These cases were subsequently consolidated.

¶14. After a trial, the chancellor found that although a confidential relationship existed between Kilpatrick and Jarvis, there was no undue influence by Kilpatrick. The chancellor, however, found Kilpatrick's "attempt to convince her brothers that there was nothing in her father's estate was substantial overreaching." As a result, the chancellor imposed a constructive trust for the use and benefit of all three children. The constructive trust included

4

the funds in Jarvis's checking account at the time of his death as well as the balance of the liquid certificate-of-deposit account, as of December 31, 2011. The constructive trust also included the $5,000 that was withdrawn from both accounts shortly before Jarvis's death.

¶15. Houston and William filed an amended motion for a new trial or amendment of judgment, which was granted in part and denied in part. From this judgment, Kilpatrick now appeals. She argues that the funds in Jarvis's checking account and liquid certificate-of-deposit account at the time of his death belong to her and are not subject to a constructive trust as part of the estate. Houston and William cross-appeal and agree with the chancellor's imposition of a constructive trust, but argue the constructive trust should have included additional sums of money.

ANALYSIS

I.      *Kilpatrick's Appeal*

¶16. Kilpatrick argues the chancellor erred in imposing a constructive trust on Jarvis's checking account and liquid certificate-of-deposit account. "A constructive trust is a fiction of equity." *Griffin v. Armana*, 687 So. 2d 1188, 1195 (Miss. 1996) (quoting *Russell v. Douglas*, 138 So. 2d 730, 734 (Miss. 1962)). The Court has defined a constructive trust as follows:

> A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*Id.* at 1194-95 (quoting *Planters Bank & Tr. Co. v. Sklar*, 555 So. 2d 1024, 1034 (Miss.

5

1990)).

¶17.    "Constructive trusts are created for the purpose of preventing unjust enrichment, whereby one unfairly holding a property interest may be compelled to convey that interest to whom it justly belongs." *Id*. at 1195. "It is the [confidential] relationship plus the abuse of the confidence imposed that authorizes a court of equity to construct a trust for the benefit of the party whose confidence has been abused." *Summer v. Summer*, 80 So. 2d 35, 37 (Miss. 1955). Clear and convincing proof is necessary to establish a constructive trust. *Allgood v. Allgood*, 473 So. 2d 416, 421 (Miss. 1985).

¶18.    The chancellor found, and the parties do not dispute, that a confidential relationship existed between Kilpatrick and Jarvis. Thus, the issue for this Court to decide is whether there was an abuse of that confidence, which authorized the chancellor to impose a constructive trust.

¶19.    "[T]his Court's review of a chancellor's findings of fact, including those regarding a constructive trust, is limited in that this Court cannot set aside a chancellor's findings of fact so long as they are supported by substantial credible evidence." *McNeil v. Hester*, 753 So. 2d 1057, 1064 (¶26) (Miss. 2000). "However, this Court conducts a de novo review of questions of law, including those regarding the applicability of a constructive trust." *Id*.

¶20.    The record shows Kilpatrick, as attorney-in-fact, liquidated the certificates of deposit owned by Jarvis at Citizens Bank. Jan White, an officer with Citizens Bank, testified that Kilpatrick closed and endorsed certificates of deposit in the amount of $105,818.19 on which Houston's name appeared as either a joint owner or as a payable-on-death beneficiary.

Additionally, Kilpatrick closed and endorsed certificates of deposit in the amount of $127,304.72, on which William's name appeared as either a joint owner or a payable-on-death beneficiary. Kilpatrick also closed and endorsed certificates of deposit in the amount of $31,841.70 on which Jarvis's name appeared. All of the checks issued by Citizens Bank as payment of those certificates of deposit were endorsed by Kilpatrick. The funds were transferred by Kilpatrick to Jarvis's checking account at Commercial Bank and/or to the liquid certificate-of-deposit account at Commercial Bank, both of which were allegedly jointly owned by Kilpatrick.

¶21. The certificate of deposit at Citizens Bank on which Kilpatrick's name appeared as the payable-on-death beneficiary was also endorsed by Kilpatrick. However, Kilpatrick created a new certificate of deposit in her name only. In May 2012, after Jarvis's death, Citizens Bank issued a check to Kilpatrick in the amount of $83,452.19.

¶22. The record further shows that $277,428.56 was deposited into Jarvis's checking account between December 2, 2004, when Kilpatrick was added to the account, and October 16, 2011, when Jarvis died. Yet the balance of Jarvis's checking account at the time of his death was only $33,981.10. Kilpatrick issued numerous checks from Jarvis's checking account that were payable to herself or to cash.

¶23. As the chancellor noted, Kilpatrick voluntarily chose to provide care for Jarvis and "benefitted greatly in a financial sense from [Jarvis's] assets." Following Jarvis's death, the remaining account balances were no longer needed for his living expenses. The chancellor properly concluded that Kilpatrick would be unjustly enriched if the remaining account

7

balances became hers since, "[a]lthough the evidence is clear and convincing that [Jarvis] intended for [Kilpatrick] to make expenditures during his lifetime, it is equally clear that he intended for his remaining assets to be divided equally among his three children after his death." We agree, and find the imposition of a constructive trust was proper.

¶24. Kilpatrick claims the funds in Jarvis's checking account and the liquid certificate-of-deposit account belong to her as joint owner with rights of survivorship and are not subject to a constructive trust. Joint ownership of a deposit account is created when it appears that the clear intention of the original owner is to divest himself of exclusive ownership of the funds at issue and vests ownership jointly in himself and another with rights of survivorship. *Strange v. Strange*, 548 So. 2d 1323, 1327 (Miss. 1989). Kilpatrick argues "the intent of [Jarvis] to construct such an account is clearly evident in the title of the bank account and his execution and change of the signature card on the account."

¶25. However, the bank statements from Jarvis's checking account did not reflect a change in the title of the account. Instead, the statements were issued to Jarvis in his name only. Additionally, it was undisputed that Jarvis never executed a new signature card when Kilpatrick's name was added to his checking account and did not execute a signature card when the liquid certificate-of-deposit account was created. Thus, there was an unresolved question of whether Jarvis intended to divest himself of exclusive ownership of the funds at issue.

¶26. Regardless, we find Kilpatrick's claim of joint ownership is misplaced. It is Kilpatrick's abuse of the confidential relationship with Jarvis that allowed her to make

8

certain transactions to her benefit. Kilpatrick, acting as Jarvis's attorney-in-fact, transferred funds which Jarvis had designated for Houston and William, but preserved certain funds designated for her. Moreover, Kilpatrick transferred the funds designated for Houston and William to accounts she now owns by right of survivorship. While those funds were used to support Jarvis during his lifetime, we find Kilpatrick's attempt to exclude Houston and William as beneficiaries amounts to an abuse of the confidential relationship she had with Jarvis, and was contrary to Jarvis's testamentary intent.

¶27. Kilpatrick further claims the power of attorney executed by Jarvis authorized her to create the joint account and to make the various transactions. In support, Kilpatrick relies on *In re Estate of Hemphill*, 186 So. 3d 920 (Miss. Ct. App. 2016). In *Hemphill*, the Court acknowledged that "under Mississippi law a [power of attorney] that grants the attorney-in-fact 'full power to handle the principal's affairs or deal with the principal's property' is sufficient to give the attorney-in-fact 'the power and authority to make gifts in any amount . . . to any individuals.'" *Id*. at 935 (¶57) (quoting Miss. Code Ann. § 87-3-7(2) (Rev. 2011)). However, in *Hemphill*, the express terms of the power of attorney prohibited the attorney-in-fact "from recognizing any personal gain on any transaction executed under authority of the [power of attorney]." *Id*. at 936 (¶60). As a result of the restrictive language, we found the attorney-in-fact's powers were limited. *Id*. at 936-37 (¶60).

¶28. Kilpatrick asserts there are no such restrictions on her powers within the power of attorney. As a result, Kilpatrick claims she was allowed to place the funds in the liquid certificate of deposit in her name and Jarvis's name as joint tenants with rights of

9

survivorship. However, pursuant to section 87-3-7(2), such gifts must be made "in accordance with the principal's history of making or joining in the making of lifetime gifts." Here, there is no evidence Jarvis had a history of gift giving other than to his church on Sundays and to his family at Christmas. Thus, Kilpatrick's reliance on *Hemphill* fails.

¶29. Kilpatrick last claims Jarvis intended for her to receive all of his assets since she took care of him. However, the witness testimony Kilpatrick offered in support of this claim consisted of her sons, stepson, and daughter-in-law, all of whom benefitted from Jarvis at some point.

¶30. Moreover, Jarvis never amended or revoked his will, even after Kilpatrick's name was added to his checking account and the liquid certificate-of-deposit account was created. Jarvis executed his will after he had executed the general power of attorney. Thus, despite the authority granted to Kilpatrick as attorney-in-fact, Jarvis intended his remaining assets to be shared by his children.

¶31. The record shows an abuse of the confidential relationship between Kilpatrick and Jarvis. Accordingly, we find the chancellor was authorized to impose a constructive trust. We find no merit to the issues raised by Kilpatrick and affirm the chancellor's judgment.

II.     *Houston and William's Cross-appeal*

¶32. In their cross-appeal, Houston and William assert the chancellor erred in denying the part of their amended motion for a new trial or amendment of judgment that sought the imposition of a constructive trust on additional sums of money. Houston and William filed their amended motion under Mississippi Rule of Civil Procedure 59. "This Court reviews

10

a trial court's denial of a Rule 59 motion under an abuse of discretion standard." *Brooks v. Roberts*, 882 So. 2d 229, 233 (¶15) (Miss. 2004). "[I]n order to succeed on a Rule 59(e) motion, the movant must show: (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or prevent manifest injustice." *Id*.

¶33. Houston and William argue that, at the very least, the constructive trust should include Kilpatrick's certificate-of-deposit proceeds of $83,452.19. We agree.

¶34. As previously discussed, Kilpatrick, acting as Jarvis's attorney-in-fact, closed and endorsed various certificates of deposit designated for Houston and William. Kilpatrick transferred the funds to Jarvis's checking account and/or liquid certificate-of-deposit account at Commercial Bank. Kilpatrick also closed and endorsed a certificate of deposit designated for her. However, Kilpatrick deposited these funds in a separate certificate-of-deposit account. After Jarvis's death, Kilpatrick redeemed the certificate of deposit in the amount of $83,452.19. Thus, the record shows Kilpatrick paid expenses with funds intended for Houston and William, but preserved certain funds intended for her.

¶35. We find that in order to prevent manifest injustice, Kilpatrick's certificate of deposit in the amount of $83,452.19 should be included in the constructive trust. We find the chancellor erred in failing to include such funds in the constructive trust, and therefore reverse and render.

¶36. **THE JUDGMENT OF THE KEMPER COUNTY CHANCERY COURT IS AFFIRMED IN PART, AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT/CROSS-APPELLEE AND ONE-HALF TO THE APPELLEES/CROSS-APPELLANTS.**

11

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**